## SHEEHAN v. SOUTH RIVER BRICK COMPANY.

1. When one who contracted to erect a building did so in substantial compliance with the terms of his contract, turned it over to the owner, received full payment for his services, and was discharged by the latter, the relation of owner and contractor between the two was at an end, whether the building in all respects conformed to the plans and specifications agreed upon or not.

2. After such relation ceased, the contractor no longer had authority to represent or bind the owner in any manner or for any purpose, and consequently could not, because of a complaint, made before the owner had accepted the building, by an architect then representing the latter, give an order for additional material to be used in remedying a defect in the building, and thus afford to the person furnishing such material a basis for asserting a materialman's lien on the realty improved.

3. Though in such a case the additional material was in fact used upon the building, if the same was done without the owner's knowledge or consent, the lien did not arise.

4. Applying what is said above to the facts of this case, it follows that the verdict of the jury was unwarranted and should have been set aside.

Argued June 19, — Decided July 14, 1900.

Foreclosure of lien. Before Judge Reid. City court of Atlanta. November term, 1899.

*Thomas F. Corrigan* and *Spencer R. Atkinson*, for plaintiff in error. *Culberson & Willingham*, contra.

LUMPKIN, P. J. The South River Brick Company brought an action against F. W. Pierce and Mrs. Elizabeth Sheehan, for the purpose of establishing and enforcing a materialman's lien. Pierce filed no answer, but Mrs. Sheehan made a vigorous defense. The jury found in favor of the plaintiff, and she brings here for review a judgment overruling her motion for a new trial. The evidence is voluminous and in many particulars conflicting. After a careful examination and study of it, we find that the following presents the most favorable view of the facts from the standpoint of the plaintiff: In the spring of 1895, Mrs. Sheehan made a contract with Pierce for the erection of a brick building on Piedmont avenue in the city of Atlanta, the same to be completed by the 1st day of July, according to certain plans and specifications prepared for her by R. L. Jones & Co., architects. Pierce made an oral agreement with the South River Brick Company, under the terms of which that company undertook to furnish him what brick he "needed for the erection of that building." At the time this contract was entered into, no definite number of brick was specified, but the parties estimated that the quantity required would be between 250,000 and 300,000. On various dates up to and including the 27th of June, the Brick Company furnished Pierce some 294,000. It furnished no more until the

4th day of November, 1895, when it delivered upon his order 250 brick, which were used by him in raising to a greater height some of the chimneys upon the building which had not previously been carried up to the height called for by the plans and specifications. Some time in September, R. L. Jones, a member of the firm of architects above mentioned, who was superintending the work for Mrs. Sheehan, complained to Pierce that some of the chimneys were not of the height specified in his contract with her. To this complaint Pierce at the time paid no attention. On the 19th of October, Jones & Co. addressed to him a letter of which the following is a copy:

"Atlanta, Oct. 19, 1895.

"Mr. F. W. Pierce, City. Dear Sir,—We note, by reference to the plans, that you have not carried the chimneys of the tenements of Mrs. Sheehan as high as they should be; and we therefore notify you to carry same done at your expense after a reasonable time has elapsed in which you fail to do so, and we will not accept the houses as complete until this and other defects are remedied.

Respectfully,     R. L. Jones & Co., Archts."

It does not appear that Mrs. Sheehan had any knowledge of the complaint made by her architects to Pierce with reference to the chimneys, or that she was informed that they had addressed to him the letter above quoted. Indeed, it does not appear that she even knew the chimneys had not been built according to contract. On the 2d day of November there was a meeting in the office of her attorneys, at which she, Pierce, and R. L. Jones were present. Pierce was then endeavoring to obtain a final settlement with Mrs. Sheehan. Nothing was said on that occasion with reference to the chimneys or any other part of the brickwork on the building. She did, however, make complaint that the house had not been completed according to contract, because of the failure of Pierce to put up certain window-blinds. Pierce contended that, under the specifications, he was not required to furnish these blinds, and in this contention was sustained by Jones. Another matter of dispute between Mrs. Sheehan and Pierce was as to how much he had forfeited by reason of his failure to complete the building within the time limited by the contract. This difference

and that relating to the window-blinds were adjusted, and Mrs. Sheehan then and there, by Pierce's direction, paid to Curtis & Craig, to which firm Pierce was indebted for other material, the full amount due him according to the settlement agreed upon. Thus the matter between Mrs. Sheehan and Pierce was finally and definitely closed. On the 4th day of November, two days later, Pierce, who had previously taken no action with regard to the letter of October 19 above set forth, delivered the same to the Brick Company, and gave to it an order for 250 brick, which were on the same day, under Pierce's order and direction, placed upon the chimneys of Mrs. Sheehan's building. This additional work was, however, done without her knowledge or consent. On the 18th of November the Brick Company addressed and sent to Mrs. Sheehan a written notice, which she received on the 21st, to the effect that Pierce was indebted to that company a balance of $420.26 for brick furnished for the erection of her building on Piedmont avenue. Subsequently the company recorded its lien based upon its demand against Pierce for material furnished him.

The main contention of Mrs. Sheehan at the trial was, that the plaintiff was not entitled to assert a lien upon her property, for the reason that it had failed, as required by law, to give her notice of its claim of lien within thirty days from the completion of the contract with Pierce. The question, therefore, upon which the case necessarily turns is whether or not, upon the state of facts above recited, the Brick Company was entitled to a verdict establishing its alleged lien. In our opinion it was not. It is clear that if Pierce, after the 27th of June, had given to the company no further order for material, notice to Mrs. Sheehan of its demand against him would have been unavailing if not served within thirty days from that date. In this connection, see the Civil Code, § 2801, which declares that the notice therein provided for shall "be given within thirty days of . . the furnishing of the material." Did the furnishing of the 250 brick on November 4th make that the date from which the thirty days should be computed? We think not. It is true that in *New Ebenezer Association* v. *Gress Lumber Co.*, 89 *Ga.* 125, this court held, in effect, that where material is furnished under "one and the same contract," but from time to time as

required, the date to be considered in determining whether or not a materialman has recorded his lien within the time prescribed by law is that upon which the last delivery of material was made.    And it would seem that this rule should be held to likewise apply in a case where the question arises whether or not the notice prescribed by statute came too late.    But, as will have been seen, the 250 brick which constitute the last item of the plaintiff's account against Pierce were not ordered or delivered to him until two days after Mrs. Sheehan had formally accepted the building, settled with him in full, and finally discharged him as her contractor.    Certainly, under these circumstances, Pierce had no semblance of authority to bind her by any further orders he might give for material to be used upon the building.    The relation of owner and contractor is, in a case like the present, necessary to support a materialman's lien.    This relation did not exist between Pierce and Mrs. Sheehan on November 4, and therefore he can not be said to have been in any sense her authorized agent at that time.    He had made a final settlement with her on November 2, after a substantial, if not a literal, compliance with the terms of his contract, and she had fully released him by unconditionally accepting the building. Accordingly, he really "needed" no more brick to be used in its construction, and had no right, even under his contract with the Brick Company, to call on it for more.    Clearly, had it declined to fill his order of November 4, no court would be justified in holding it liable for a breach of its contract with him.

If, at the time of making the final settlement above alluded to, Mrs. Sheehan had insisted that Pierce should thereafter, though paid in full, place additional bricks upon the chimneys, or if it had been tacitly understood between them that he was to do so, this case would wear an altogether different aspect. In that event, she could not be heard to say he was, on November 4, no longer her contractor or authorized to act in that capacity.    But, as has been seen, no such understanding was had between them.    On the contrary, it is evident that Mrs. Sheehan in good faith endeavored on the day of the settlement to bring about a final adjustment of every matter, with a view to discharging from her service, at once and for all time, her contractor.    Indeed, there is something more than a suggestion

in the record that upon the occasion referred to Mrs. Sheehan was very anxious ·to sever all business relations with Pierce. The mere fact that the additional 250 brick were not only ordered by Pierce but actually placed upon the building belonging to Mrs. Sheehan would not warrant a finding that the relation of owner and contractor continued after November .2; for it affirmatively appears that these brick were delivered on Mrs. Sheehan's premises and used on the building without her knowledge and without her consent, express or implied.

*Judgment reversed. All the Justices concurring.*