## PRINCE *v.* NEAL-MILLARD COMPANY.

1. The law creating liens in favor of materialmen furnishing materials to a contractor for the improvement of real estate, embodied in the Civil Code, §2801, par. 2, as amended by the act of 1897 (Acts 1897, p. 30) and the act of 1899 (Acts 1899, p. 33), as hitherto construed by this court, is not in violation of the provision of the constitution which declares that no person shall be deprived of his property without due process of law, or the provision which guarantees that protection to property shall be impartial and complete.

2. Where an owner of property entered into an agreement with a contractor to make improvements thereon, and the contractor, after partly completing the work, abandoned it, and the owner took charge and completed it at a cost less than the total contract price; and where a materialman who had furnished material to the contractor, which was used in the improvement, proceeded to foreclose his lien on the property for an amount less than the balance left after deducting the cost of completion from the contract price, if the owner sought to defend against such proceeding on the ground that he had made advances or payments to the contractor, it was incumbent on him to show that he had done so in accordance with the provisions of the law creating materialmen's liens, or that amounts advanced by him to the contractor had been properly appropriated, in the manner indicated in the decision in *Green* v. *Farrar Lumber Co.*, 119 *Ga.* 30.

3. The evidence in the present case failing to establish a defense, a verdict in favor of the plaintiff was not contrary to law or the evidence.

Argued November 15, 1905.—Decided February 19, 1906.

Foreclosure of lien. Before Judge Cann. Chatham superior court. June 30, 1905.

The Neal-Millard Company, a corporation doing business as a materialman, proceeded to foreclose a lien on certain property belonging to E. L. Prince, for material furnished by it and used in building on the lot, which material was furnished upon the contract and employment of one Herb, a contractor employed by the owner and engaged in erecting the improvement. Herb made no defense. Prince defended on the ground that the contractor abandoned his contract before its completion, leaving the house in an unfinished condition; that at the time of such abandonment the owner had more than paid him for what had been done; and that it was necessary to expend more than the balance due under the contract in the completion of the work. A motion was made to dismiss the proceeding, on the ground that the act of 1899, amending section 2801 of the Civil Code, was unconstitutional, because opposed to the principle that no person shall be deprived of property except by due process of law, and the principle that protection to property must be impartial and complete; and that if the act were constitutional, the declaration was fatally defective in not alleging that Herb, the principal contractor, completed his contract or did not abandon the same, or that the material furnished was such as the contract required. The motion was overruled, and the defendant excepted pendente lite. On the trial the evidence disclosed that the contract price of the work was $1,662.50; that while Herb was at work Prince advanced to him amounts aggregating $1,245; and that after he abandoned the work Prince necessarily expended $650.40 in completing it. The furnishing of the materials by the plaintiff on the order of Herb, their use in making the improvements, the recording of the lien, and the proceeding to foreclose it in the manner pointed out by the statute appeared. Herb testified, that he was engaged in carrying on several building contracts for different people at the same time; that he received money from all the contracts, and paid it out on all the contracts in the ordinary course of business; that he never made any attempt to pay for each job out of money derived from that alone, and could not say what

proportion of the money received from Prince was applied to the accounts due for his house, and that he had no data on hand as to parties, amounts, or debts. The jury found for the plaintiff. The defendant moved for a new trial, which was refused, and he excepted.

*Adams & Adams,* for plaintiff in error.

*Twiggs & Oliver,* contra.

LUMPKIN, J. (After stating the facts.) In the civil law certain creditors were declared to be privileged. Among these were persons who had contributed to the preservation, repair, enlargement, or creation of an improvement on land. Domat says: "Architects and other undertakers, workmen, and artificers, who bestow their labor on buildings or other works, and who furnish materials, and in general all those who employ their time, their labor, their care, or furnish any materials, whether it be to make a thing, or to repair it, or to preserve it, have the same privilege for their salaries, and for what they furnish, as those who have advanced money for these kinds of works, and which the seller has for the price of the thing sold." Domat's Civil Law (Cushing's ed.), 683, §1744. At common law there was no lien in favor of a mechanic or materialman doing work or furnishing materials for the improvement of land or buildings. The earlier statutes passed for this purpose generally gave a lien to persons having direct contractual relations with the owner, but not to persons furnishing materials or performing labor for the contractor. Other statutes were in time passed extending the right to assert a lien to persons who did not have a direct contractual relation with the owner, but furnished labor or materials for the improvement of the real estate through contracts with the contractor. As stated by Judge Lurton in Jones *v.* Great Southern etc. Co., 86 Fed. 379, "This was accomplished in two ways: (1) By giving to creditors of the contractor a derivative lien, whereby they were substituted to the rights of the contractor as they existed when notice was given of the claim. Such statutes were in the nature of mere garnishee or attachment proceedings, and were subject to no criticism as doing injustice to the owner. Payment in advance was a defense under such statutes, for the contractor's creditors could stand in no better situation than he did. So, if he had no lien, his creditors had none, as their utmost right was to be substituted to

the contractor's place.    (2) Or by statutes which gave to those who furnished such labor or materials to the contractor a direct or independent lien upon the building and land of the owner." On account of the fact that two leading commercial States respectively adopted substantially these two lines of legislation, which others have followed, resulting in decisions apparently conflicting, the two methods have frequently been referred to as the "New York system" and the "Pennsylvania system." The one gives a lien to the subcontractor by way of subrogation, made effectual by notice; the other gives a direct lien to the materialman or laborer, which has sometimes been said to result from an agency created by statute, and sometimes from an implied agency vested in the original contractor. Another statement is that the contract is made in view of the law which, if valid, enters into it, rather than that there is the creation, strictly speaking, of an agency, unless the statute so declares. The Supreme Court of Missouri decided that the statute of that State created no agency, and that the owner was not bound by the price agreed upon between the contractor and materialman, but only for the market value of the materials.    Deardorff v. Everhartt, 74 Mo. 37.    See, on this subject, Merrigan v. English, 9 Mont. 113, 5 L. R. A. 837, 838; Hunter v. Truckee Lodge, 14 Nev. (on rehearing) 33-46; 20 Am. & Eng. Enc. L. (2d ed.) 350.  Phillips on Mechanic's Liens (3d ed.), §57, after referring to the two systems (of which he says the Pennsylvania system was the first), adds: "The plan of conferring on them a right of lien for all sums which may be due them, irrespective of payments already made by the owner to the contractor, has not met with much favor in later legislation.    The tendency has been rather to confine their right to what may be owing by the owner at the time of notice to him of their claims."

In considering the general nature of a lien given to mechanics and materialmen furnishing labor or material to the contractor under the law of Tennessee, though not discussing the constitutionality of the law, it was said in Central Trust Co. v. Condon, 31 U. S. App. 387, 67 Fed. 84: "A subcontractor's lien under the statute is not dependent on the principal contractor's having perfected his lien.    Green v. Williams, 92 Tenn. 220, 21 S. W. 520.    It is independent of and superior to his lien, and is only limited by the amount due to the principal contractor at the time of the service of notice by the subcontractor on the railroad company."    In

Central Trust Co. *v.* Richmond Co., 31 U. S. App. 675-688, 68 Fed. 90, the case dealt with was one arising under a statute of Kentucky; and it was said that "The clear purpose of the Kentucky statute was to make the liens of the contractor and subcontractor independent, direct liens, the latter limited only by the amount of the original contract price. The lien of the subcontractor does not spring out of the lien of the contractor, and is not derived therefrom or subordinate thereto." Though Pennsylvania is treated as the parent of the direct lien system, Judge Lurton (in the decision above referred to) declares that "the state of the decisions in Pennsylvania is quite peculiar." 86 Fed. 377-8. Thus in Waters *v.* Wolf, 162 Pa. St. 153, a contractor agreed neither to have a lien nor to create one in favor of others. A subcontractor who had not consented to the stipulation asserted a lien. The court held that the act of 1891, which provided that the owner should make no contract with the contractor which would operate to defeat the rights of subcontractors and materialmen to file liens, and that they should have a lien notwithstanding any stipulation to the contrary between the owner and the contractor, was unconstitutional as interfering with the right of "acquiring, possessing, and protecting property." On the subject of stipulations against liens and the conflicting decisions as to them, see 20 Am. & Eng. Enc. Law (2d ed.), 363, and notes.

In general, direct lien laws have been held constitutional, although certain extreme laws or provisions in laws seeking to protect mechanics and materialmen have been held unconstitutional. Boisot on Mech. Liens (3d ed.), §§ 22-24; Phillips on Mech. Liens (3d ed.), §§ 30, 33a; Hightower *v.* Bailey, 108 Ky. 198, 49 L. R. A. 255; Smith *v.* Newbauer, 114 Ind. 95, 33 L. R. A. 685. The two conflicting views as to the constitutionality of an act which gave to subcontractors, laborers, and those who furnished machinery or material to the contractor an independent lien will be clearly seen by comparing Overton on Law of Liens, 578, § 553; John Spry Lumber Co. *v.* Sault Savings Bank Co., 77 Mich. 199; Palmer *v.* Tingle, 55 Ohio St. 423; and, on the other hand, the exhaustive opinion in Jones *v.* Great Southern Hotel Co., 86 Fed. 370. For an instance of extreme provisions held unconstitutional, see Randolph *v.* Builders' & Painters' Supply Co., 106 Ala. 501, 17 So. 721. Two provisions of that act were specially attacked: first, that persons declared to be entitled to a lien should also have a lien for attorney's

fees; and second, a declaration that the fact that a person furnishing materials was not notified in writing not to furnish such materials, by the person in whom the title was vested at the time such materials were furnished, should be prima facie evidence that they were furnished by and with the consent of the owner. This was held to be an unconstitutional interference with property, under the guise of fixing a rule of evidence. See also Meyer *v.* Berlandi, 39 Minn. 438. In the case last cited it was said: "The basis of the right to enforce a claim, as a lien against property, is the consent of the owner, and it is upon this principle alone that laws giving liens to subcontractors are sustained. The contract of the owner with the contractor is, under the law, the evidence of the authority of the latter to charge the property with liabilities incurred by him in performing his contract." In the Randolph case it is said: "Nor is it denied that the owner's contract is made under and subject to the provisions of the existing lien law, provided these provisions do not infringe his constitutional rights."

A review of the legislation which has been enacted in this State on the subject of liens of mechanics and materialmen may not be uninteresting. The first act which I have found creating liens of the character now under consideration is that of December 18, 1820, entitled, "An act to give master carpenters and master masons a lien on buildings erected by them in the city of Savannah." Dawson's Compilation, 301. On December 22, 1834, an act was passed declaring that all debts which should thereafter become due to any mason or carpenter in the counties of Richmond and McIntosh and the cities of Savannah, Macon, and Columbus, for work done and material furnished for building or repairing any house, when no personal security should be taken, should constitute an incumbrance on the house and premises. All other laws giving masons and carpenters liens were repealed. On December 28, 1837, the provisions of this act were extended to all the counties of the State. See Cobb's Dig. 555, 557. When the original code (which was adopted by the act of 1860, to take effect January 1, 1862, and the operation of which was suspended by the act of 1861 until January 1, 1863) became the law, it was provided (§1971) that "All mechanics who have taken no personal security therefor shall have a lien on every house, and the premises to which it shall be attached, for work done or materials furnished in building or re-

pairing such house. Which lien shall be superior in dignity and of higher claim than any other incumbrance without regard to date. And such lien upon the improvements made by the mechanic shall attach to them without regard to the title." An act was passed in 1866, which it is unnecessary to set out, as it contained nothing material to the present consideration. On February 24, 1873 (Acts 1873, p. 42), a general act was passed regulating the law of liens in this State. After providing for a lien in favor of mechanics, contractors, and materialmen, it proceeded "When work done, or material furnished for the improvement of real estate, is done, or may be furnished upon the employment of a contractor, or some other person than the owner, then, and in that case, the lien given by this section shall attach upon the real estate improved, as against such true owner, upon written notice given to him, stating the amount claimed, before he settles with or pays such contractor·or employer, and when·he has settled or paid in part only, for the balance still unpaid at the time of such notice." This act was incorporated in the Codes of 1873 and 1882, beginning with section 1972. On October 19, 1891, an act was passed, "to provide additional security to materialmen and laborers; to provide a penalty for making false affidavits, and for other purpo̅ses." (Acts 1890-91, p. 233.) This was codified in the Code of 1895, §§2802, 2803. But it has been held not to have created a lien or amended the lien laws. *Wilder* v. *Walker,* 98 *Ga.* 508. On December 18, 1893 (Acts 1893, p. 34), an act was passd amending section 1979 of the Code of 1882. It provided that when work was done or material furnished upon the employment of a contractor or some other person than the owner, the lien should attach upon the real estate improved, as against such true owner, for a lien of twenty-five per cent. of the contract price of the work done or material furnished, upon written notice given, within thirty days, to the owner, of the amount of work done or material furnished. On December 16, 1895 (Acts 1895, p. 27), section 1979 of the code, as amended by the act of 1893, was again amended by providing that such liens should attach upon such real estate as against the owner to the extent of no more than twenty-five per cent. of the contract price agreed to be paid by the owner to the contractor or person other than the owner, and by providing further for the distribution of said twenty-five per cent. The act of 1873, as amended by the acts of 1893 and 1895, was incor-

porated in the Code of 1895, §2801, which was divided into four subsections. On December 18, 1897, an act was passed repealing paragraphs three and four of section 2801 of the code, and also sections 2802 and 2803, and making additions to paragraph two of section 2801. This struck out the twenty-five per cent. clause, and provided for the lien of materialmen to attach as against the true owner upon written notice given to him, within thirty days, of the amount of work done or material furnished, provided that in no event should the lien attach for a sum greater than such balance as the owner might be indebted to the person having the contract, at the time of the service of such notice. On December 19, 1899 (Acts 1899, p. 33), paragraph two of section 2801 of the code was still further amended, so as to read as follows: "When work done, or material furnished for the improvement of real estate is done or may be furnished upon the employment of a contractor, or some other person than the owner, then and in that case the lien given by this section shall attach upon the real estate improved, as against such true owner, for the amount of the work done or material furnished, unless such true owner shows that such lien has been waived in writing, or produces the sworn statement of the contractor, or other person, at whose instance the work was done or material was furnished, that the agreed price or reasonable value thereof has been paid; provided, that in no event shall the aggregate amount of liens set up hereby exceed the contract price of the improvements made." Thus the law still stands, and in regard to it the later decisions referred to herein were made.

From this it will be seen that numerous and important changes have been made in the laws of this State giving liens to mechanics and materialmen. There has not always been an adherence to the Pennsylvania system or to the New York system, but our lien laws have sometimes approximated one and sometimes the other, and have sometimes included special and peculiar provisions. In the beginning they were more like the Pennsylvania system, then they changed into a greater similarity to the New York system, and again changed so as to more nearly approximate the Pennsylvania system. It has been held that the existence of the relation of owner and contractor is necessary as a basis for a lien in favor of one furnishing materials to the contractor (*Sheehan* v. *South River Brick Co.,* 111 *Ga.* 444; 20 Am. & Eng. Enc. Law (2d ed.), 250;

that the statute does not modify the general principle that the title of the true owner can not be incumbered by a lien, without some act on his part signifying his assent (*Reppard* v. *Morrison,* 120 *Ga.* 28) ; and that the creation of a lien in favor of a person furnishing material to a contractor, "or some other person than the owner," means some person occupying a relation to the owner similar to that of a contractor, and does not include a lessee or stranger. *Pittsburgh Plate Glass Co.* v. *Peters Land Co.,* 123 *Ga.* 723. In this connection compare 20 Am. & Eng. Enc. Law (2d ed), 314, 315, 350, 362(5b). As construed by this court, we think the law referred to is not violative of the section of the constitution which declares that no person shall be deprived of his property without due process of law, or that which guarantees that protection to property shall be impartial and complete.

2, 3. In *Hunnicutt* v. *Van Hoose,* 111 *Ga.* 518, which was decided when the law required the owner only to retain twenty-five per cent. of the contract price of the building, it was held that he might make partial payments to the contractor, provided he retained such per cent.; that if before the completion of the building according to the contract the contractor abandoned the work and left the building uncompleted, it was the right of the owner to take possession of the same and complete it; and if in doing so the amount required for completion, when added to the sums properly paid to the contractor, exceeded the original contract price, such owner or his property was not liable to a materialman for any amount. All the Justices concurred, except Fish, J., who dissented. In *Green* v. *Farrar Lumber Co.,* 119 *Ga.* 30, it was held, that "the owner of property improved by a contractor is bound to see that money paid by him to the contractor is applied to claims for material or labor unpaid at the date of the payment to the contractor, or else he will be liable for such claims in the event the contractor fails to pay them. When no claims of lien have been filed, the materialmen and laborers may be paid in such order as the contractor determines. If a claim of lien has been filed and recorded, then the owner must see that such materialman or laborer is satisfied out of the money paid by him to the contractor, or he will be held liable for the amount in the event, upon suit brought, it should be determined that the claim was valid. The owner is not in any event required to pay more than the contract

price of the improvement to materialmen and laborers, but it is incumbent upon him to see that payments to the contractor are, to the full amount of the contract price, appropriated to materialmen and laborers, if there are valid claims to this extent." In that case payments were made by the owner in the absence of any affidavit by the contractor that he had paid for materials and labor. In *Rowell* v. *Harris,* 121 *Ga.* 239, it was said: "In proceedings under the Civil Code, §2801, as amended, laborers, materialmen, and subcontractors can recover only to the extent that the owner of the property became liable to the contractor under the contract for the improvement of the real estate." But this must be taken in connection with the facts of the case then under consideration. Lawson contracted to build and alter a house for Harris for $725. Harris paid Lawson $25 or $40 on account. Lawson did about $200 worth of work, and thereupon abandoned the contract. Rowell was an employee of Lawson, and recorded his lien within three months after performing the services, for $20, the amount of work he had done. After Lawson abandoned the contract, Harris got bids from other contractors to complete it, and awarded it to J. B. Haigler at $825, he being the lowest bidder. It will thus be seen that, after the abandonment of the work by Lawson, it cost the owner more than the entire contract price to complete it; and as under our statute the owner is in no event liable for an amount in excess of the contract price, he could not be held liable either by the contractor or the laborer. So construed, this case is in line with that of *Hunnicutt* v. *Van Hoose,* supra. If the contractor abandons his contract, the owner may have it completed and charge the necessary cost of completion against the contract price, before being liable either to the contractor or to the materialman. Whether or not an owner is bound at all events to complete a job only begun and abandoned by the contractor, so as perhaps to entail upon himself serious loss, merely in order to demonstrate that none of the contract price is available for the purpose of paying materialmen and laborers, is not now in question. But if he does complete the work, the necessary cost of doing so may be deducted from the contract price, and the property will only be subject to the lien of the materialman to the extent of the balance. In *Stevens* v. *Georgia Land Co.,* 122 *Ga.* 317, it was held, that, as the aggregate amount of liens set up could not exceed the contract price of the

improvements made, it was incumbent on one foreclosing a materialman's lien to show that the amount for which he asserted the lien came in whole or in part within the contract price.   In *Arnold* v. *Farmers Exchange,* 123 *Ga.* 731, it was held that it was not necessary for a materialman to allege that the contractor had completed his contract with the owner of the premises, or that the owner had not paid the contractor for the improvements made, upon his sworn statement that he had paid for the material used. This recognizes the fact that the right to a lien by a materialman is not one strictly of subrogation to the right *to a lien* by a contractor.   See also, on the general subject, *Lombard* v. *Trustees,* 73 *Ga.* 322; *Castleberry* v. *Johnston,* 92 *Ga.* 499.

If such balance has been lawfully paid out upon the making of an affidavit as provided by the statute, or has been advanced to the contractor and applied as indicated in the case of *Green* v. *Farrar Lumber Co.,* supra, there is no liability on the part of the owner or his property.   But if such balance has been advanced by him to the contractor, and has not been properly applied, there is such a liability.   Where the owner has made advances to the contractor, the burden of showing their proper application rests on him, in order to defeat a lien claimed by a materialman.   In this case he failed to carry such burden.   The only evidence on the subject was that of the contractor, who testified, that the owner paid him $1,245; that he was building another house for a different owner and was repairing a third at the same time; that the money received by him from all contracts was paid out in the ordinary course of business, using money from all contracts to pay on all contracts; that he never made any attempt to pay for each job out of money derived from that alone; so that he could not say exactly what proportion of the money received from the owner was applied to the accounts due for his house, as the money was received on different contracts and paid on all bills as they fell due; and that he had no data on hand as to parties, amounts, or dates. The verdict was, therefore, not contrary to law or the evidence, and there was no error in overruling the motion for a new trial.

*Judgment affirmed.*   *All the Justices concur, except Atkinson, J., who did not preside.*