## Steele & Lebby v. Flynn-Sullivan Co.

(Decided Nov. 11, 1932.)

COMBS & COMBS for appellants.

J. C. HOPKINS and EDWARD P. HILL, Jr., and WHEELER & WHEELER for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

The appellants and defendants below, James A. Steele and Thomas D. Lebby, are partners doing business under the firm name of "Steele & Lebby." The appellee and plaintiff below, Flynn-Sullivan Company, is a corporation, under the laws of West Virginia. It recovered a judgment in the Floyd circuit court against defendants for $2,414.40 with interest and costs, and for the enforcement of a materialman's lien on a fund due to defendants by Floyd county to secure it, and defendants prosecute this appeal therefrom. There are two questions involved: (1) Whether under the disclosed facts defendants were personally liable for the amount of the claim recovered by the judgment, and (2) whether the claim was and is a lienable one under our Mechanics' and Materialmen's Lien Statute (Ky. St. sec. 2463 et seq.)?

The facts are these: Floyd county entered into a contract with defendants Steele & Lebby to construct, according to specifications, two bridges in the city of Prestonsburg, across Big Sandy river, a part of which work was the making of a passway under the tracks of the Chesapeake & Ohio Railway Company. The contract was entered into on October 3, 1928, and the amount agreed to be paid defendants for the work was $159,791. Following the letting of the contract and on the same day, the contractors sublet to C. Y. Ligon, designated and prescribed portions of the work at so much per unit, i. e., for lineal feet of piling, dimensions of concrete work done, cubic yards of dirt and material removed, etc., but the work included in the sub-contract was confined to specified portions of the entire job. Both the contractor and sub-contractor immediately began preparations for the prosecution of the work and to assemble material, tools, and equipment for that purpose. At that time there was a partnership in Charleston, W. Va., composed of J. T. Flynn and W. C. Stalnaker, who were doing business under the firm name of Acme-Crane Service Company. A part of the busi-

ness in which it was engaged was the renting of cranes to contractors in the prosecution of work similar to that involved in this case, the crane being employed to lift, move, load, and unload heavy material as well as the operation of a shovel in moving dirt, stone, etc., and also as a pile driver, each of which classes of work was performed by different attachments adaptable for the purpose.

Following the obtention of his subcontract, Ligon appeared in the office of the Acme-Crane Service Company in Charleston, W. Va., and entered into a contract with it whereby it rented to him a crane to be shipped to Prestonsburg, and to be employed by him in the work of performing his subcontract, and he thereafter used it for that purpose until his death, which occurred on December 18, 1928; the use of the crane having commenced the latter part of the preceding October or the first part of November. Ligon was murdered, and at the time of his death he had performed only about 10 per cent. of the work necessary to complete his undertaking. Defendants, as the contractors of the entire job, waited several days to ascertain whether the estate or representatives of Ligon would carry out his contract, the result of which was that they entirely withdrew from the undertaking and abandoned it, and thereby made default. Some of the excavations he had commenced before his death were only partially completed and which would be destroyed by the winter overflows of the river, and to prevent that being done it was absolutely necessary for the work to be finished before the floods came. Therefore, Steele & Lebby took charge thereof, and in doing so they paid for some material, and, perhaps, for some minor equipments that Ligon had procured for the purpose of fulfilling his contract.

Immediately following the death of Ligon, and after defendants had taken over his work, Flynn appeared upon the scene and defendants inquired of him if his firm would permit them to use the crane in finishing the immediate piece of work to which it was adjusted at the time of Ligon's death, and he declined to do so, unless defendants would assume and pay the amount due under Ligon's rental contract of the crane, and which was and is the amount sued for and recovered by the judgment appealed from, and which included freight and other minor items in addition to the rent, but which were embraced in Ligon's rental contract.

Defendants declined to assume that account, and the Acme Company loaded the crane in the cars and shipped it to their home office at Charleston, W. Va. Later, and within the time prescribed by law, it filed and perfected a materialman's lien for the amount of its account against Ligon, and following that it assigned and transferred all of its interest therein to the newly formed corporation of Flynn-Sullivan Company, the plaintiff and appellee herein.

The latter filed this action in the Floyd circuit court against Steele & Lebby, Floyd county, its fiscal court, and the members thereof, to recover the claim so assigned to it and to enforce the lien by impounding and subjecting a sufficient amount of the funds due to Steele & Lebby for that purpose, with the result already stated; and which brings us to a discussion of the questions above recited.

But preliminary thereto a question is raised by attorney for defendants which should, perhaps, first be disposed of. It is, that under the doctrine announced in the case of Frailey v. Winchester & B. R. Co., 96 Ky. 570, 29 S. W. 446, 16 Ky Law Rep. 645, plaintiff, corporation, as assignee of the claim may not assert the lien contended for, since it did not personally furnish the appliance, the rental value of which forms the claim sued on. The inapplicability of the Frailey opinion is made manifest by the fact that the assignor of the claim there involved had not perfected the lien at the time of the assignment therein, nor was it ever done by the assignor. In this case the Acme Company, who leased or let the crane to Ligon, completed its lien before the assignment thereof to plaintiff, and that assignment carried with it, not only the claim itself, but also the securities for its payment that had been legally acquired at that time. We will now take up and dispose of the two questions supra.

1. The first is one purely of fact, since the personal judgment rendered against defendants was improper, unless they in some manner were in privity with Ligon's agreement to pay, or unless they in some manner became personally obligated to pay it. The endeavor is made throughout the preparation of the case to fasten personal liability on appellants for the payment of the claim upon the theory that Ligon was their agent in performing the work that he undertook to

do in his subcontract. But that effort was a most dismal failure, since the rent contract between defendants and Ligon, and the one between the latter and the Acme Company, clearly demonstrate that Ligon was a subcontractor and that the Acme Company under which plaintiffs acquired title to the claim contracted with and exclusively looked to him for payment, notwithstanding its members, at the time of entering into the written rental contract, knew that the original contractors were Steele & Lebby. With that knowledge they made no insistence upon the insertion in that contract of any provision whereby Steele & Lebby would become obligated to them thereunder. The attempt made by counsel in the examination of the witnesses to prove that agents and servants of Steele & Lebby so participated in the prosecution of Ligon's work up to the time of his death as to render him their agent, instead of their subcontractor, was equally futile.

The extent to which that participation went was only the exercise by inspectors of Steele & Lebby of such supervision as was necessary to ascertain the amount and character of material that he was using in the prosecution of the work and that it complied, not only with his obligation in his subcontract, but likewise with the obligation of Steele & Lebby in their contract with the county. We, therefore, have no trouble in concluding that the record discloses no ground upon which the personal judgment rendered against Steele & Lebby can be sustained. That conclusion could be further fortified with a more minute analysis of the testimony; but, since that course would prolong this opinion without corresponding benefit, we will refrain from doing so.

2. Question 2 is one exclusively of law, and concerning which the courts are not in accord. But preliminary to its disposition it might be proper to state that in no event could the claim or any other one arising under the statute attach to or in any wise incumber the public structures, which in this case are the two bridges agreed to be built for the county by defendants. See Roe v. Scanlan, 98 Ky. 24, 32 S. W. 216, 17 Ky. Law Rep. 595; Noonan v. Hastings, 101 Ky. 312, 41 S. W. 32, 19 Ky. Law Rep. 485, 72 Am. St. Rep. 419; Allen County v. U. S. F. & G. Company, 122 Ky. 825, 93 S. W. 44, 29 Ky. Law Rep. 356; Knott County Board of Education v. Martin, 218 Ky. 688, 291 S. W. 1062;

and Mid-Continent Petroleum Corporation v. Southern Surety Company, 225 Ky. 501, 9 S. W. (2d) 229, 231. However, if the necessary statutory steps are taken by the one performing the labor or furnishing the material to perfect the lien, it will attach, not the public structure, but, by analogy to attachment process it will impound any part of the unpaid contract price for the improvement then in the hands of the public functionary that was having the work done, and in this case there was enough of such unpaid balance in the hands of Floyd county to satisfy the claim sued on. Having said so much, we now come to a disposition of the law question supra.

As we have said, courts are not entirely in accord as to the proper answer to be given. Some of them are inclined, through a later day departure from their original holdings, to broaden the applicability of such statutes so as to embrace rental claims for equipment; but our investigation discloses that they are in the minority and that the majority of them, including this one, reject such claims as being embraced within the terms of the statutes. As said by us in the Mid-Continent Petroleum Corp. Case, supra, each case must largely depend upon its own facts, and to which may be added "also upon the terms of the particular statute involved." Likewise, our investigation discloses that in some of the minority cases so holding, the question was made to turn on the phraseology of the particular contract, or that of the bond given by the contractor for the faithful performance of the work and in which the surety thereon was sought to be charged.

One of the cases so holding is that of Illinois Surety Company v. John Davis Company, 244 U. S. 376, 37 S. Ct. 614, 617, 61 L. Ed. 1206, and which was disposed of without discussion or elaboration, with only this brief statement: "The equipment was used in the prosecution of the work. Material was thus supplied, although a loan serving the purpose, no purchase of it was made. The expense of loading and freight was properly included with the fixed rental as recoverable under the bond. Title Guaranty & Trust Co. v. Crane Co., 219 U. S. 24, 34, 31 S. Ct. 140, 55 L. Ed. 72, 77." It is also to be noted that the minority opinions holding the lienability of rent claims for equipment deny such quality for sums due for the purchase price of the equipment, although it is perfectly manifest that a use

under a rental contract is tantamount to a purchase for a limited period instead of a transfer of the absolute title.

But, however that may be, this court in the case of Henry Bickel Company v. National Surety Company, 156 Ky. 695, 161 S. W. 1113, 1114, where the precise question here involved was presented, held that a claim for rent of a necessary equipment in the prosecution of the work was not a lienable claim under our statutes. The equipment employed in that case was a hoisting engine performing the same character of service that the crane did in this case, and which makes it an exactly analogous one in every essential particular. The opinion refers to a number of foreign cases, as well as prior domestic ones all of which may be found by consulting it, and in which the various courts rendering them denied the lienability of such claim. The language we therein employed in so concluding is: "The engine which was used in this case occupied the same place as a hammer, saw or other tool used by the workmen. The person who rented the engine is no more entitled to a lien on the sewer for the rent than the merchant would be who sold him the spades, drills, or other tools constituting his plant, with which he did the work. In Evans v. Lower, 67 N. J. Eq. 233, 58 A. 294, one of the claims was for the tools furnished the contractor and used in the work. A lien was refused. In Lohman v. Peterson, 87 Wis. 227, 58 N. W. 407, the owner of oxen hired them out to a person who performed labor in hauling ties and asserted a lien for the rent of his oxen. The claim was disallowed."

In the Mid-Continent Petroleum Corporation Case, the question involved was the lienability of a claim for oil and gas used in the operation of an engine employed in the construction work. After citing and discussing a number of cases from this and other courts, all of which may be found therein, the conclusion was reached that a claim for such articles was lienable and could be asserted under our statutes; but that conclusion was bottomed *exclusively* upon the fact that the material for which the claim was made was itself consumed in the prosecution of the work and could not thereafter be employed in similar work. Under that reasoning, fortified by the opinions therein cited, it was concluded with some hesitation that the material at least constructively went into the work and for which reason

it was lienable. It is pointed out in that opinion that the same conclusion would necessarily follow in the case of dynamite that was consumed in explosions rendered necessary to the prosecution of the work. But we were careful enough therein to say that: "The line must be drawn somewhere, but we are unwilling to draw it in the twilight zone between explosives used to move dirt and rock and fuel used to furnish motive power for machinery that does precisely the same work."

In arriving at that conclusion it is pointed out in that opinion that the articles therein consumed, and for the price of which the lien was asserted, generated and furnished the motive power of the engine that consumed them, and took the place of manual labor that would otherwise be required to perform the same task and the cost of which latter method of performance if done would undoubtedly be lienable under the statutes by its express terms. However, it would not necessarily follow that because of that fact (in case of manual power) that the cost of the thing operated, or rental price thereof, would likewise be lienable any more than, as pointed out in the Bickel Case, any other tool or implement employed in the prosecution of the work.

But it is argued that we held in the case of Fidelity & Deposit Company of Maryland v. Charles Hegewald Company, 144 Ky. 790, 139 S. W. 975, that a claim for repairs to machinery employed in the prosecution of the work was lienable and that, by analogy, that holding should be applied to the facts of this case; but which we think is an erroneous conclusion. The cost of the repairs to the machinery in that case were necessary in order that it might operate, just as the gas and oil were necessary for its operation in the Mid-Continent Petroleum Corporation Case. There would be a failure to function in the absence of either the repairs in the one case, or the gas and oil in the other. At any rate, as said in the Mid-Continent Petroleum Corporation Case, "The line must be drawn somewhere," and we think there is no more appropriate, as well as no more certain place to draw it, than at the point of entire consumption of the article in its use in performing the work, and that in all cases where the article is not consumed but preserved for future like use no claim for its use is embraced within the terms of the statutes. Were it otherwise, it would require but a short step to ex-

pand the list of claims embraced by the statute so as to include feed for animals, or for workmen, physicians' and hospital bills if any of the latter should be injured, and a host of others of like remoteness, until the intention and purpose of the statute would be far exceeded. A later domestic case fortifying the same conclusion is Standard Oil Company of New Jersey v. National Surety Company, 234 Ky. 764, 29 S. W. (2d) 29.

For a discussion of this question reference is made to the case of Royal Indemnity Company v. Day & Maddock Company, 114 Ohio St. 58, 150 N. E. 426, 430, 44 A. L. R. 374. It was a case against the surety in the contractor's bond, but involved a claim for rent of equipment the same as in the instant case. In the course of the opinion many cases from that and other courts are referred to and analyzed, and in denying the lienability of the rent claim there involved the court said: "The ownership of the contractor in the appliance in the one case differs from the ownership of the contractor in the other only in degree. The reason for the preferment of the materialman, whose material has been incorporated in a public building and placed beyond any possibility of recovery, or repossession, does not apply to the manufacturer or dealer who supplies an appliance which never loses its identity, and never becomes an integral part of the public building." Following that case in the volume of the A. L. R. reports is an appended annotation in which the editors collect all the cases on each side of the proposition, and from a reading of them the conclusion is inevitable that the sounder logic and the best reasoning is employed by the courts that deny the lienability of such claims. With reference to the Supreme Court opinion in the Illinois Surety Company Case, supra, the annotation in 30 A. L. R. beginning on page 467 says: "The court, without discussion of the point, held that a claim of an equipment company for rent of cars, track, and equipment used at the Naval Training Station, and the expense of loading the plant 'and freight thereon to and from the station,' were properly allowed under a bond of the contractor for work on the Naval Training Station at Chicago," and which bond was conditioned "for the benefit of persons furnishing 'labor and material.' " The inference to be drawn from the comment is, as we have said, that the editors concluded the Supreme

Court did not enter into a discussion of the question, but expressed its conclusion in the short ipsi dixit statement that it employed.

In view of the conclusions reached in the domestic Bickel Case, supra, fortified as it is by the citations therein made, as well as by logic and sound reasons, and in the light of the purpose and object of the statute (and still further fortified by our conclusions in the Mid-Continent Petroleum Corp. Case and others referred to· therein), we conclude that the rent claim herein attempted to be asserted for the crane leased from the Acme Company is not a lienable one under the Statutes and that the court erred in so adjudging.

Wherefore, the judgment is reversed, with directions to set it aside and to dismiss the petition.