## 32467.   GIGNILLIAT *v.* WEST LUMBER COMPANY.

Decided December 5, 1949.   Rehearing denied December 17, 1949.

*Grant, Wiggins, Grizzard & Smith, Drennan & Brannon,* for plaintiff in error.

*Herbert Johnson, Ross Arnold,* contra.

MacINTYRE, P. J. ■ In Cutler-Hammer *v.* Wayne, 101 Fed. 2d, 823, the Fifth Circuit Court of Appeals, in construing §§ 67-2001 and 67-2002 of the Code of Georgia of 1933, stated: "The purpose of the [materialman's] lien statutes in every state is, in substance, the same; this is, to give the furnisher of labor and material a claim upon the owner, to compel him at his peril to withhold final payment until he has received assurance from

the contractor that he has paid all material and labor claims, which are or which may be perfected into liens." Code § 67-2001 (2) provides: "When work done or material furnished for the improvement of real estate is done or furnished upon the employment of a contractor or some person other than the owner, the lien given by this section shall attach to the real estate improved as against the true owner for the amount of the work done or material furnished, unless such true owner shall show that such lien has been waived in writing *or shall produce the sworn statement of the contractor or other person, at whose instance the work was done or material was furnished, that the agreed price or reasonable value thereof has been paid:* Provided, that in no event shall the aggregate amount of liens set up hereby exceed the contract price of the improvements made." (Emphasis added.) Under this statute, when the owner produces the affidavit of the contractor in compliance with such statute, stating that all bills for labor and material have been paid, the materialman's claim against the owner by command of the statute cannot be perfected into a lien upon the property of the owner. When this case was formerly before this court, the evidence did not show any such affidavit, and the court held that the evidence demanded a verdict in favor of the materialman's lien attaching to the owner's property. In the present case, the evidence, as we have said in the statement of fact preceding this opinion, is substantially the same as that reported in the former case, except in the present case the owner tendered new evidence in the form of and concerning an affidavit from the contractor, which the defendant Gignilliat contends, had the affidavit been admitted in evidence, would have authorized the judge, sitting without a jury, to find that the owner Gignilliat had produced the sworn statement of the contractor that all bills for labor and material furnished had been paid, in compliance with Code § 67-2001 (2).

Relative to the affidavit tendered, Gignilliat testified in part: "I took no affidavits whatsoever from Falkenberg & Meador. I wouldn't say that I just didn't care whether the material was paid for or not. I was very interested, in fact, as to whether or not the house delivered to me would be free of any legal difficulties. . . I made no investigation to see whether or

not any money was still due on the property—the only thing was the afternoon that the deal was closed, and in the office of Mr. Brannon and Mr. Drennan I was present and very interested when the question was asked Meador & Falkenberg if there were any outstanding bills that had not been paid, and the answer to that was no, and I was advised by Mr. Brannon that an affidavit was in the process of being taken at that very minute to that effect that there were no outstanding bills or liens. . . As to my seeing that affidavit that I was telling the jury about a few minutes ago in Mr. Brannon's office, I do not recall personally examining it except that we were gathered around the table, similar to this, and Mr. Brannon had the legal documents which we were in the process of signing, and I heard the question asked—I recall Mr. Meador and Mr. Falkenberg signing some paper and they had the seal of their corporation but I do not know that I ever personally examined that document. He had the seal of the corporation with him and I saw it. When I say 'he' I mean either Meador or Falkenberg. . . We closed the sale of the property known as 1747 Clairmont Road from Falkenberg & Meador Inc. to me in the office of Drennan & Brannon on September 20, 1946. Mr. Brannon, Mr. Falkenberg, Mr. Meador and myself were present, and I think a secretary. We were all seated around a table. The question as to whether there were any unpaid bills outstanding against this job was directed to Mr. Falkenberg and Mr. Meador. All this was so long ago that I can't remember it very well, but seems to me that at that time there was some discussion about two debts that had not been paid. A telephone call was made in connection with one of them. I believe it was to Decatur Building and Loan Association, but I do not know what the other debt was. I did not do anything about the debts and made no investigation to see that they were paid. It was my understanding that an amount sufficient to take care of those items was held out by Mr. Brannon. Mr. Falkenberg and Mr. Meador then signed some papers, and one of them was supposed to be an affidavit about outstanding bills. I remember they had the seal of the corporation there. When I first saw the property, the foundation of concrete block had already been laid. I did not ask Falkenberg & Meador to build the house;

they did not build the house at my direction. I simply agreed to buy the house when and if it were completed. Everything I testified to at the previous hearing was true, and I do not wish to change it."

George Brannon testified: "I am an attorney and I was in charge of the disbursing of all funds at the consummation of the sale of the property known as 1747 Clairmont Road from Falkenberg & Meador Inc., to William Robert Gignilliat. This was on or about September 20, 1946. I am familiar with that document marked for identification Defendant's Exhibit 1. That is my signature at the lower left portion of the document; I notarized it. I saw the instrument signed by the affiant, and the affiant read the document before he signed it. I recall the case very vividly. At the time this transaction was closed these people were in my office; that is Mr. Falkenberg and Mr. Meador and also the purchaser, Mr. William R. Gignilliat, was present and I handed this affidavit to Mr. Falkenberg and asked him to read it, which he did before he signed the affidavit. I gave him a verbal explanation of the meaning of this affidavit, at which time he signed it and I notarized it; and I asked him was he the president of Falkenberg & Meador Inc., and he stated he was; and I went into the question rather thoroughly with him about whether or not there were any outstanding bills for labor or material due in connection with the construction of this residence on this property. I then had him hold up his right hand and definitely swore him to this affidavit. The defendant in this case, William Robert Gignilliat, was present at that time. At that time I was a Notary Public for the State of Georgia at Large with a commission expiring on April 4, 1948. The date of this attestation was September 20, 1946. I relied upon this affidavit (Defendant's Exhibit 1) when I disbursed the funds; in the absence of the affidavit I would not have closed the transaction. I am familiar with the document identified as Defendant's Exhibit 2, which purports to be a warranty deed from Falkenberg & Meador Inc. to William R. Gignilliat. That is my signature at the lower left corner of the instrument; I notarized the deed. I saw Mr. Falkenberg sign that deed, and I might add that this affidavit was signed with one stroke of the pen, and at the next stroke of the pen, as soon as he was ad-

ministered the oath under the affidavit, the warranty deed was signed by Mr. Falkenberg as President of Falkenberg & Meador and by W. D. Meador as Secretary. It was all done at the same sitting over the span of a very few minutes of time. Both of those documents, Defendant's Exhibit 1 and Defendant's Exhibit 2, were signed by the same individual."

The material part of the affidavit in question was: "Georgia, Fulton County. In person before the undersigned duly authorized by law to administer oaths came Falkenberg & Meador Inc., who being duly sworn, deposes on oath and says: That (he, she, it) is the owner of the fee simple title in and to the following described property [description of the property]. There are no liens, judgments, or mortgages or other matters or instruments affecting the title to said above described property. . . There are no outstanding and unpaid bills for labor and/or materials used and employed in making any improvements on said described property during the past 90 days. . . [Signed] Falkenberg & Meador Inc., by H. O. Falkenberg. Sworn to and subscribed before me this 20th day of September, 1946, [Signed] George Brannon, Notary Public, Georgia State at Large." This was such an affidavit, when viewed in the light of the other evidence concerning its execution, as should have been allowed in evidence when tendered. *Chandler* v. *Southern Ry. Co.*, 113 *Ga.* 130, 132 (38 S. E. 305). This affidavit sets out defense matter and is signed, "Falkenberg & Meador, by H. O. Falkenberg," and contains a jurat, which is "Sworn to and subscribed before me this 20th day of September, 1946, [Signed] George Brannon, Notary Public State at Large." It was shown by Brannon's evidence that the person signing the affidavit, H. O. Falkenberg, was questioned as to whether he was at the time of the signing of the affidavit, the president of Falkenberg & Meador, and he stated that he was, and he was therefore presumably authorized to make the affidavit. *Georgia Lumber Co.* v. *Thompson*, 34 *Ga. App.* 281 (129 S. E. 303), and cit. We think that it was error not to allow this affidavit in evidence.

This case is differentiated from *Bank of Dearing* v. *Howard*, 44 *Ga. App.* 663 (162 S. E. 644), for in that case it was said that, where "the corporation could not take an oath and the agent did not purport to do so," there was no personal affidavit so

as to comply with the requirement of the law that there be a personal signature such as would subject the signer to the punishment of false swearing if the averments in the affidavit had been untrue. In that case the corporation could not take an oath and the agent did not purport to do so, and in a prosecution for false swearing it could be said by the agent that he took no oath, that he did not even purport to do so, and that the bank, a corporation, could not take an oath and in the eyes of the law no oath was taken and hence no crime of false swearing had been committed; whereas, in the instant case, the officer duly authorized to administer oaths before whom the affidavit was made testified that he had Falkenberg hold up his right hand and as president of the corporation swear to the contents of the affidavit, and thereupon Falkenberg signed the affidavit, "Falkenberg & Meador Inc., by H. O. Falkenberg." We think that under the record in this case the affidavit in question was the personal affidavit of Falkenberg as president of the corporation, and that, if he swore falsely, he would be subject to indictment for false swearing.

■ "Where a materialman seeks to foreclose his lien against real estate which has been improved with material furnished by him to a contractor for such purpose, he can not recover a general verdict and judgment against the owner of the land for the value of the material furnished," and "a materialman can not recover a general judgment against the owner of the land for the material furnished, for the simple reason that he is no party to the contract for the purchase of the material." *Langley* v. *Simmons*, 143 *Ga.* 699 (85 S. E. 832); *Mauck* v. *Rosser*, 126 *Ga.* 268, 271 (55 S. E. 32); *Massachusetts Bonding &c. Co.* v. *Realty Trust Co.*, 142 *Ga.* 499 (5) (83 S. E. 210); *Holmes* v. *Venable*, 27 *Ga. App.* 431 (109 S. E. 175); *Chambers Lumber Co.* v. *Gilmer*, 60 *Ga. App.* 832 (5 S. E. 2d, 84). See, in this connection, *Ga. State Savings Assn.* v. *Wilson*, 189 *Ga.* 21, 28 (5 S. E. 2d, 14); *Rutland Contracting Co.* v. *Gay Estate*, 193 *Ga.* 468 (18 S. E. 2d, 835). There was no evidence of any contractual relationship between West Lumber Company, the plaintiff, and Gignilliat, the owner defendant, and the court erred in entering a personal judgment against the defendant Gignilliat.

For the foregoing reasons, the court erred in refusing to admit

the affidavit of Falkenberg & Meador Inc., which was tendered in evidence by the defendant Gignilliat. Had it been received in evidence, the judge would have been authorized to find that the affidavit was a complete defense to the attaching of the lien to Gignilliat's property, in the absence of any other showing; and the court erred in entering a general personal judgment against the defendant Gignilliat in the absence of any evidence of a contractual relationship between the plaintiff and the defendant Gignilliat.

*Judgment reversed. Gardner and Townsend, JJ., concur.*