42660. D. H. OVERMYER WAREHOUSE COMPANY et al. v. W. C. CAYE & COMPANY, INC.

ARGUED MARCH 7, 1967—DECIDED JUNE 30, 1967.

*Smith, Cohen, Ringel, Kohler, Martin & Lowe, Ralph H. Hicks, Hoke Smith, Donald A. Weissman,* for appellants.

*Hansell, Post, Brandon & Dorsey, Charles T. Zink,* for appellee.

EBERHARDT, Judge. ■ ■ It is well settled that the laws affording liens to mechanics, materialmen and others supplying labor or materials used in the improvement of realty are in derogation of the common law, and must be strictly construed. Consequently, "one who claims a lien must bring himself clearly within the law." *Hawkins v. Chambliss,* 116 Ga. 813, 814 (43 SE 55); *Haralson v. Speer,* 1 Ga. App. 573, 575 (58 SE 142).

The forerunner of our present law was a statute enacted December 22, 1820, providing liens to master masons and master carpenters of Savannah for their labors in the making of improvements, extended to certain named counties and affording liens to the suppliers of materials in 1834, and extended in application throughout the State in 1837. See the able history of our lien laws by Judge Lumpkin in *Prince v. Neal-Millard Co.,* 124 Ga. 884 (53 SE 761, 4 AC 615). In construing the Act providing liens to masons and carpenters for their labors and materials, it was held that to be entitled to the benefit of the statute they must actually be masons or carpenters, and must have contracted in that capacity. *Pitts & Cook v. Bomar,* 33 Ga. 96. After mechanics were included it was held that "If the plaintiffs were mechanics, and contracted to do the work in the capacity of mechanics, they would be entitled to their lien. Aliter, if they were to do the work in the capacity of contractors." *Savannah, G. & N. A. R. Co. v. Grant &c. Co.,* 56 Ga. 68. Laborers having been included as those who might have liens, it was held that even though a laborer might both work and supply materials in making the improvement, he could only claim a lien for his labor, since the statute with reference to laborers made no mention of a lien for materials. It was otherwise as to mechanics, for the statute as to them made reference both to labor and materials. See *Code* §§ 67-1801, 67-2001. *Hilley v. Lunsford,* 29 Ga. App. 398 (115 SE 667).

We have mentioned these cases as illustrations of the strictness of interpretation that must be employed in dealing with the lien statutes. *Code Ann.* § 67-2001, under which the lien sought to be foreclosed in this action to foreclose is claimed pro-

■

vides for a lien to "all materialmen furnishing material to sub-contractors, ·. . . and persons furnishing material for the improvement of real estate."

What is "material" within the meaning of this statute? While we have found no cases from the appellate courts of this state precisely defining the term, there is one from each of them, which we shall presently mention, substantially doing so and we find many from other jurisdictions having lien laws of the same import and in general using the same language. It is something that goes into and becomes a part of the finished structure, such as lumber, nails, glass, hardware, etc., which is necessary to the completion of the building,—the object of the lien statutes being to secure a lien for that which goes into the structure. Gilbert Hunt Co. v. Parry, 59 Wash. 646 (110 P 541); McMillan v. Joseph P. Casey Co., 311 Ill. 584 (143 NE 468).

Our Supreme Court held in *J. S. Schofield & Son v. Stout, Mills & Temple,* 59 Ga. 537, that "Machinists, and manufacturers of machinery, have no lien on real estate for machinery furnished, *unless the machinery furnished is attached to, and becomes incorporated with, the realty* for which it was furnished." (Emphasis supplied).

We held, in the very recent case of *Air Service Co. v. Cosmo Investments,* 115 Ga. App. 596 (155 SE2d 413), in a relatively similar situation: "Giving the statute a strict construction as we must (*Green v. Farrar Lumber Co.,* 119 Ga. 30 (46 SE 62)), we are inclined to conclude both that a mere *lessor of machinery* to a contractor does not come within the class in favor of whom the lien is granted, nor does the machinery itself, not being something in the order of a steam mill or other mechanical device *intended to be attached to and used on the realty,* meet the criterion under the rule of ejusdem generis." (Emphasis supplied.)

In other jurisdictions it has been held that a claim for the rental of a crane used for driving piling on which the building was constructed is not a lienable item, Steele & Lebby v. Flynn-Sullivan Co., 245 Ky. 772 (54 SW2d 325), or for the rental of a hoisting engine used in pile driving, Henry Bickel Co. v. National Surety Co., 156 Ky. 695 (161 SW 1113), or the rental

on scrapers used for clearing, Hall v. Cowen, 51 Wash. 295 (98 P 670) (or for the use of pans and ends used as concrete forms) Consolidated Cut Stone Co. v. Seidenbach, 181 Okla. 578 (75 P2d 442).

"The owner of horses, equipment or machinery, who furnishes them to another to aid in construction or improvements, or in any work for which a lien is given, but who performs no manual labor or other services in connection therewith, is not entitled to a lien." Caldwell v. Steinfeld, 294 F 270, 271. Nor is one entitled to the rental of oxen used in hauling cross ties, Evans v. Lower, 67 N. J. Eq. 232 (58 A 294), or for the hauling of debris from a lot on which improvements are to be made, Sound Transfer Co. v. Phinney Realty &c. Co., 71 Wash. 473 (128 P 1047).

One who sells shovels, shovel handles, gloves, tape, rope, files, matches, pulleys and hooks, hammers, brushes, sand screens, lamp chimneys and saw files to a contractor who has a contract for improving realty is not entitled to a lien for those items. Crowell Lumber &c. Co. v. Ryan Co., 110 Neb. 225 (193 NW 609). These simply come in the category of a worker's tools; they do not go into or become a part of the building. This was pointed out in Henry Bickel Co. v. National Surety Co., 156 Ky. 695, supra, when the court asserted: "The engine which was used in this case occupied the same place as a hammer, saw or other tool used by the workmen. The person who rented the engine is no more entitled to a lien [on the property] for the rent [of the engine] than the merchant would be who sold him the spades, drills, or other tools constituting his plant, with which he did the work."

The nuts, bolts, couplers, braces, corner posts, guardrails, lumber and boards which Judge Jordan mentions in his dissent were parts and portions of the scaffolding itself, or, as plaintiff's witness Craddock testified, items for repairing damage to it. There is no proof that a single item went into the building. The record indicates that they were furnished under the contract for renting of scaffolding, and "where there is an entire contract and there is no lien for one part there can be no lien for any part." Libbey v. Tilden, 192 Mass. 175, 193 (78 NE 313, 7 AC 617). Nor can an item which is not lienable be

made so by including it in a contract for work or items which are lienable, the lien arising out of the statute, and not out of the contract. Sound Transfer Co. v. Phinney Realty &c. Co., 71 Wash. 473, supra. If, under our statutes items lienable can be separated from those which are non-lienable on a foreclosure proceeding (which we do not here decide), the burden of doing so rests upon the plaintiff. If there is a confusion of charges, as Judge Jordan suggests, plaintiff must eliminate the confusion by demonstrating and proving what items of the account are lienable. That this plaintiff utterly failed to do.

■ Inescapably, the rental on this company's scaffolding is not lienable. If, in this day of advanced building methods, those who engage in the rental of scaffolding, cranes, and the like should be afforded a lien, it is a matter for the General Assembly. We have no power to grant it or to change the statute.

Moreover, while it is alleged that the "goods" were furnished to W. J. Nixon Company "for the use in the improvement of the real estate," there is neither allegation nor proof as to the capacity in which W. J. Nixon Company acted—whether as contractor for the owner, as lessee, as tenant, or on behalf of some tenant, and for this reason as well no lien can be foreclosed. *Morgan v. May Realty Co.*, 86 Ga. App. 261 (71 SE2d 438).

The allegation of the petition that Overmyer, together with *Nixon Construction Company* as general contractor, and Commercial Union Insurance Company as surety, executed and filed a bond for disencumbering the property from the lien claimed, with a copy of the bond attached as "Exhibit C" showing Nixon Construction Company signing it, is admitted in the answer. Assuming that this is sufficient as an admission that the defendant named in the petition as amended, *W. J. Nixon Company*,[1] was the general contractor for Overmyer in constructing the warehouse, and assuming that the rental charge is a lienable item, there remains the obligation of plaintiff to obtain a judgment against the contractor before it is entitled to have any lien foreclosed as against the owner, none of the

[1]There was no proof whatever that these were the same, or that one was a trade name of the other.

special circumstances excusing under *Code Ann.* § 67-2002 (3) having been alleged or proven. *Lombard v. Trustees of Y. M. C. A. Fund,* 73 Ga. 322; *Clayton v. Farrar Lumber Co.,* 119 Ga. 37 (45 SE 723); *Mauck v. Rosser,* 126 Ga. 268, 274 (55 SE 32); *Griffin Bros. v. Gainesville Iron Works,* 144 Ga. 840 (2) (88 SE 201); *Victory Lumber Co. v. Ellison,* 95 Ga. App. 105, 106 (97 SE2d 334). As will be later observed in this opinion, we conclude that plaintiff could not obtain such a judgment.

■ Is plaintiff entitled to a common law judgment against D. H. Overmyer Warehouse Company of Georgia, the owner of the property on which the improvement was made, or against W. J. Nixon Company?

There is no allegation in the petition that plaintiff either sold or rented anything to D. H. Overmyer Warehouse Company, and not a word of evidence that it did so. The invoices on which the suit is based are all made to W. J. Nixon. Plaintiff's vice president in charge of sales testified as to the matter: "Q. Have you ever had any dealings with Overmyer Warehouse? A. Only in connection with the *renting of the scaffolding to W. J. Nixon* in care of Overmyer Warehouse. It was furnished for the Overmyer Warehouse job."

Assuming that there was a general contractor—whether Nixon Construction Company or the W. J. Nixon Company—and that there was some connection between W. J. Nixon and the general contractor, the record is wholly devoid of any evidence that Overmyer at any time authorized any rental of the scaffolding on its account or on its credit. The only evidence of any dealings relative to the scaffolding were as to those had with W. J. Nixon. Consequently plaintiff's only recourse against Overmyer was its claim of lien, if entitled thereto. No common law judgment could be rendered against it on the claim. *Gignilliat v. West Lumber Co.,* 80 Ga. App. 652 (2) (56 SE2d 841); *Chambers Lbr. Co. v. Gilmer,* 60 Ga. App. 832, 835 (5 SE2d 84).

What of the contractor? Assuming that there was some connection between W. J. Nixon and the W. J. Nixon Company (though there is an utter failure of proof as to that) and that there was some connection between Nixon Construction Company and the W. J. Nixon Company (of which there is likewise an utter failure of proof), there is no proof whatever of

what the connection was, or of what authority, if any, he had to bind the company. There is no proof that the scaffolding was rented on the company's credit, but to the contrary plaintiff's witnesses say that it was *rented to and charged to W. J. Nixon,* as the invoices indicate.

Mr. Craddock, plaintiff's vice president, testified: "Q. Have you ever had any dealings with W. J. Nixon Corporation? A. Yes. Q. What dealings were they? A. We *rented scaffolding to W. J. Nixon,* scaffolding and scaffolding supplies." The orders for the scaffolding were obtained by telephone conversations with Mr. Nixon. In identifying the invoices he testified: "Q. Who did you make your invoices out to? A. W. J. Nixon, care of Overmyer Warehouse, at a certain address. Q. Why did you make them out to W. J. Nixon? A. *We were instructed that's who they were supposed to be charged to.* Q. Has anyone from the Nixon Company contacted you since the time of these first billings, since the time of the billings? A. Not me, no."

Mr. Julian Nelson, who has charge of plaintiff's accounting department, testified that plaintiff had had dealings with W. J. Nixon Company since the latter part of 1963, that since the date of the billings he had been in touch with Mr. Hoke Smith, whom he understood to be an attorney for W. J. Nixon, who "told me the account would be paid," and advised him to go ahead and file a lien. Although Judge Jordan asserts that "W. J. Nixon Company made an appearance by its attorneys on the trial of the case," the assertion is unsupported by the record. Pleadings were filed on behalf of W. J. Nixon, Overmyer and Commercial Union Insurance Company, but none for W. J. Nixon Company or for Nixon Construction Company. *After judgment* there was an acknowledgement of service on a motion to set the judgment aside by attorneys for W. J. Nixon Company, but that could not bind it as to any proceedings prior to that time. He testified that plaintiff had no account in the name of Nixon Construction Company, or in the name of W. J. Nixon Company, and in fact had none other than in the name of W. J. Nixon. Though he testified that some of the billing had been paid by W. J. Nixon Company, some by Overmyer Warehouse, and some by W. J. Nixon, it is certain that mere payment on the account of another cannot bind or

create a liability against the payer for a remaining balance. He had no knowledge that there was or is such a corporation as W. J. Nixon Construction Company. All of the billing was to W. J. Nixon. The unpaid balance of the account was $2,768.79.

"A corporation is a separate and distinct legal entity from a natural person, though the two have similar names." *Nix v. Luke,* 96 Ga. App. 123 (99 SE2d 446). "A corporation and even its sole owner are two separate and distinct persons." *Thoni Oil Magic Benzol Gas Stations v. Kimsey,* 114 Ga. App. 638 (152 SE2d 576). Accord, *Garmany v. Lawton,* 124 Ga. 876, 879 (1) (53 SE 669, 110 ASR 207); *Shingler v. Shingler,* 184 Ga. 671 (3) (192 SE 824). And if the individual is president of the corporation, they are still separate and distinct. *Jolles v. Holiday Builders, Inc.,* 222 Ga. 358, 360 (149 SE2d 814). But even these connections are not shown here. No proof whatever was tendered as to Mr. Nixon's capacity, whether as an officer or an agent, with the W. J. Nixon Company.

Since there is no proof of it, we cannot assume that the W. J. Nixon Company, the defendant named in the petition as amended, and Nixon Construction Company, a principal in the bond to disencumber, were one and the same. Each of these names imports a corporation, and there is a presumption that each of them is a corporation (hence a separate corporation) until the contrary is shown. *Holcomb v. Cable Co.,* 119 Ga. 466 (46 SE 671); *Villa Rica Mfg. Co. v. General Amer. Life Ins. Co.,* 55 Ga. App. 328 (190 SE 49); *Stephens v. Bibb Invest. Co.,* 54 Ga. App. 321 (187 SE 709). While plaintiff's witnesses did testify that it had previously done business with the "Nixon Company" this was simply proof (presumptively) of transactions with still another company, which neither signed the bond nor was made a party defendant to the action. There is no proof that the "Nixon Company" had any connection whatever with the renting of the scaffolding or the construction of the warehouse.

There is no evidence to support any judgment against either W. J. Nixon Company or Nixon Construction Company. Nixon Construction Company is specifically not a party defendant, and there has been no service on W. J. Nixon Company, which was purportedly made a party defendant by amendment. In this

connection, since the individual and the corporation are separate entities, the amendment sought to add a new party defendant to a proceeding at law, which cannot be done. *Miles v. Wilson*, 212 Ga. 60 (90 SE2d 568); *Code* § 81-1303.

While a judgment might have been authorized against W. J. Nixon, individually, he was voluntarily removed as a defendant to the action by the amendment.

Since no lien can be foreclosed, no judgment of any kind can be entered against Commercial Union Insurance Company, the surety on the bond to disencumber, its liability being expressly contingent upon foreclosure of the lien within a twelve-months period.

We must conclude, therefore, that under this record no judgment could be entered against the owner, the surety on the bond, against W. J. Nixon, now deleted as a party, Nixon Construction Company, which was never a party, or the W. J. Nixon Company, to which no credit was extended and which is not lawfully a party defendant.

The judgment for the defendants was demanded, and it was error to grant a new trial.

*Judgment reversed. Felton, C. J., Bell, P. J., Hall, Pannell, Deen and Quillian, JJ., concur. Jordan, P. J., and Joslin, J., dissent.*

JORDAN, Presiding Judge, dissenting. ■ This being an appeal from the trial court's first grant of a new trial, this court should not reverse except upon a showing that the trial court abused its discretion. *Code Ann.* § 6-1608.

Under the confused circumstances of this case, where the court sitting without a jury had entered judgment for the defendants, it did not abuse its discretion in the first grant of a new trial to the plaintiff.

As pointed out in *Griffin v. Sellers*, 170 Ga. 577 (153 SE 359), appellate courts "will not closely scrutinize the facts in evidence or endeavor to balance with great exactness the testimony of both sides with a view to detecting an abuse of discretion by the trial judge. The exercise of that discretion in favor of granting new trials should be encouraged."

The majority opinion, in holding that the contractor was not a party to the proceedings, overlooks the amendment which

made the W. J. Nixon Company a party without requiring new service. The amendment was allowed without objection from the defendant, there was no attack on the service or lack of service in the trial court and the defendant W. J. Nixon Company made an appearance by its attorneys on the trial of the case. See *Cherry v. McCutchen*, 68 Ga. App. 682, 689 (23 SE2d 587).

There was no dispute as to service on the corporation or in substituting it as a party in lieu of the individual. Yet the majority opinion hinges on this technicality which was not raised in the trial court and which cannot, therefore, be considered here. *Knighton v. Alexander*, 81 Ga. App. 565 (59 SE2d 409); *Watson & Strickland v. Parian Paint Co.*, 138 Ga. 621 (75 SE 608).

The evidence is clear and uncontradicted that the debt is due and that the materials were furnished to the contractor for the Overmyer Warehouse job. The only conflict lies in whether the plaintiff's proof shows they were furnished to W. J. Nixon individually or the W. J. Nixon Company. In this state of proof the trial judge first directed a verdict for the defendants, then granted plaintiff's motion for a new trial. The only thing that concerns us at this stage is whether the trial judge abused his discretion in so doing. Since this is the first grant of a new trial, the trial court's discretion should not be disturbed under the circumstances of this case.

■ As to Division 1 of the opinion, the invoices introduced into evidence show charges for such items as nuts and bolts, couplers, braces, corner posts, guardrails, lumber and boards, in addition to the charges for rental of the scaffolding. Such items would clearly be lienable materials furnished for the improvement of real estate. No attempt was made in the trial of the case to separate the lienable items from the non-lienable items since the defendants made no objection on this ground and all parties during the trial and on this appeal apparently assumed that the materials furnished were lienable, including the scaffolding.

I am authorized to state that Judge Joslin concurs in this dissent.