### CLIMATROL INDUSTRIES, INC.

v.

**HOME INDEMNITY COMPANY, Defendant, T & B Builders, Inc., Defendant and Third-Party Plaintiff, United Bonding Insurance Co., Third-Party Defendant.**

**Civ. A. No. 13426.**

United States District Court,
N. D. Georgia,
Atlanta Division.

June 1, 1970.

On Motion to Dismiss July 21, 1970.

Maley & Crawe, Atlanta, Ga. for Climatrol Industries, Inc.

Swift, Currie, McGhee & Heirs, Atlanta, Ga., for United Bonding Ins. Co.

Smith, Currie & Hancock, Atlanta, Ga., for Home Indem. Co. and T & B Builders, Inc.

### ORDER

ALBERT J. HENDERSON, Jr., District Judge.

By this order, the court considers the motion to strike of third party defendant United Bonding Insurance Company (hereinafter referred to as United), against T & B Builders, Inc. (hereinafter referred to as T & B). United seeks to strike from T & B's complaint its request for the statutory penalty and attorney's fees for the bad faith refusal of an insurer to pay compensation for a loss which is covered by a "policy of insurance". Ga.Code Ann. § 56–1206 (Supp.1969). The motion must be denied.

In its brief, United adverts to Ga. Code Ann. § 56–409(2) (1960) which states, in pertinent part:

"Surety Insurance" includes:

\* \* \* \* \* \*

(2) Insurance guaranteeing the performance of contracts, *other than insurance policies,* and guaranteeing and executing bonds, undertakings, and contracts of suretyship. (emphasis added).

United points out to the court that the insurance in the present case is a surety bond, rather than a usual "policy of insurance". It argues that, because the Georgia Code definition of surety and insurance excludes policies of insurance, the statutory penalties applying to a policy of insurance do not apply to surety insurance. United further states that research has disclosed no reported Georgia case in which a plaintiff has been granted penalties and attorney's fees in a suit on a performance-payment bond, such as existed in this case.

On the other hand, T & B responds to United's motion, stating that, although no Georgia case exists on this question, other jurisdictions have permitted recovery under similar penalty statutes for bad faith refusal to pay under similar surety insurance contracts. *See* United States for Use and Benefit of Magnolia Petroleum Company v. H. R. Henderson & Co., 126 F.Supp. 626, 637–639 (W.D.Ark.1955); United States for Use and Benefit of Peevy v. Pensacola Construction Co., 257 F.Supp. 131 (W.D.Ark.1966). Further, T & B urges that United misinterprets the phrase

in § 56–409(2), "other than insurance policies" as meaning that all policies of insurance are excluded from the definition of surety insurance. T & B urges that the correct reading of the provision is that surety insurance is defined as insurance guaranteeing the performance of contracts, except insurance contracts. In other words, a contract for "re-insurance" is not included within the definition of surety insurance. The court is persuaded by the logic presented by T & B and the case of United States for Use and Benefit of Magnolia Petroleum Company v. H. R. Henderson & Co., *supra*.

■ Moreover, the court disagrees with United that the inclusion of reference to § 56–1206 and a request for the corresponding penalty and attorney's fees is prejudicial. *See* Pessin v. Keeneland Ass'n, 45 F.R.D. 10 (E.D. Ky.1968). In addition, motions to strike are disfavored, and such a motion will not be granted unless it is plain that the pleadings in issue can have no possible bearing on the subject matter of the suit. Augustus v. Board of Public Instruction, 306 F.2d 862 (5th Cir. 1962); Lambert v. Ford Motor Co., 46 F.R.D. 46 (N.D.Ga.1969); Pessin v. Keeneland Ass'n, *supra*.

Therefore, United's motion to strike hereby is denied.

## ON MOTION TO DISMISS AMENDMENT TO COMPLAINT

Third party defendant, United Bonding Insurance Company, (hereinafter referred to as United) has moved this court to dismiss plaintiff's first amendment to its complaint for failure to state a claim upon which relief can be granted. For reasons stated in this order, the motion must be denied.

Plaintiff, Climatrol Industries, Inc. is ultimately seeking payment for ma- (hereinafter referred to as Climatrol) terials it sold Magna Building Corp.

(hereinafter referred to as Magna) and for which Climatrol has never been paid. Plaintiff, Climatrol, in its complaint, brought suit against Home Indemnity Co. as surety on the bond between the prime contractor, T & B Builders, Inc. (hereinafter referred to as T & B) and the owner, Oak Grove Methodist Church. T & B sought and obtained permission to intervene as a party defendant by order of this court, February 9, 1970. Shortly thereafter, T & B filed a third party complaint against United, claiming, in essence, that United as surety on the performance and payment bond between T & B and Magna had failed to comply with the terms of said bond and, therefore, should be held accountable for all present and future damages that T & B had and would suffer as a consequence thereof. Plaintiff now, in its amended complaint, seeks to include United as a party defendant to his original suit in hopes of collecting directly from the person whom he claims is ultimately liable for payment, i. e. United, rather than the other more circuitous route through T & B and its surety, the original defendant in this suit. United resists this amendment by contending in its motion to dismiss and the accompanying brief, that "a supplier or material-man cannot bring suit directly against the surety on a bond such as the one in question here." Since this exact question has not been fully adjudicated in any one case thus far, this court elects to discuss in some detail the specific points herein involved.

This court's denial of United's motion rests upon its determination of two issues, namely: Does a materialman have a valid personal claim against a payment bond made for his benefit", and if so, may a subcontractor sue the surety of said bond directly and in his own name?

With reference to the first issue, this court finds that the bond in question, entitled "Performance-Payment Contractor's Bond", was both a "perform-

ance" and a "payment" bond as those terms are commonly used and understood. See 17 Am.Jur.2d Contractor's Bonds § 1. Whatever interest plaintiff has under this bond is derived from the provisions contained therein which deal with payment obligations of the surety. More specifically, the following words, taken from the bond itself, are the ones under which plaintiff asserts his interest: " * * * shall pay all persons who have contracts with the Principal for labor or materials * * * ".

Ample precedent exists for plaintiff's contention that he is the "real obligee in interest of this obligation". See Fidelity and Deposit Co. of Maryland v. Pittman, 52 Ga.App. 394, 400, 183 S.E. 572, 576 (1936). Subcontractor bonds with clauses such as the one quoted above have consistently been construed so as to recognize the materialman's true interest. In Union Indemnity Co. v. Riley, 169 Ga. 229, 150 S.E. 216 (1929), the Georgia Supreme Court, in construing a payment bond cause almost identical to the one involved in the case at bar, concluded that the materialman should be recognized as the primary beneficiary of such a bond, and, therefore, the materialman's suit against the surety was entirely proper. It is true, as the third party defendant contends, that in *Riley* the suit was not brought in the name of the materialman. It is equally true, however, that *Riley* is not offered to substantiate such a proposition. Whether plaintiff may or may not sue in his own name will be discussed later.

■ United cites Glens Falls Indemnity Co. v. Southeastern Construction Co., 207 Ga. 488, 62 S.E.2d 149 (1950); American Surety Co. v. A. T. Small Quarries Co., 157 Ga. 33, 120 S.E. 617 (1923); and American Surety Co. v. County of Bibb, 162 Ga. 388, 134 S.E. 100 (1926) to substantiate its claim that the mere furnishing of materials is not enough to allow a materialman's suit on the bond, and, in addition, that there must exist some degree of privity between the surety and the supplier. This court fully agrees with such a statement of the law; for, in any jurisdiction, if the parties do not intend that the materialman should be indemnified, the contract (or bond) should not be so construed. The court in *Glens Falls*, however, goes on to explain how privity is determined, " * * * any *privity* between the surety on the bond and the materialman *must be found in the terms of the written contract * * * ".* Glens Falls Indem. Co. v. Southeastern Const. Co., *supra*, 207 Ga. at 491, 62 S.E.2d at 151. (emphasis added).

■ It is exactly this conclusion of the court in *Glens Falls* that distinguishes that bond from the one at bar. The court denominated the bonds in the above cited cases as "completion" bonds which provide, in essence, that the surety's sole obligation was to save harmless the obligee with no concurrent rights running to the materialman. It is the opinion of this court that the "payment" bond in question here is different in character from the one before the court in *Glens Falls*. In light of those cases construing clauses of similar import to the one in question, United's implied admission of Climatrol's interest under the bond when it contests merely "plaintiff's right to sue United directly", and the affidavit of T & B's secretary-treasurer that such was the understanding of the third party plaintiff when it executed the bond, the unavoidable conclusion must be that the bond, as written, was intended by both parties to inure to the benefit of plaintiff in this suit.

The question of whether plaintiff may sue United directly and in its own name is no less clear. In 1949, Georgia Code § 3–108 was amended so as to allow a "beneficiary of a contract made between other parties for his benefit to maintain an action against the promisor on said contract". In light of what has been said about Climatrol's interest under this bond, the plain meaning of the

**318**

statute could be relied upon solely in denying United's motion. This is not necessary, however, since the pre-1949 Georgia rule as expressed in American Surety Co. of New York v. DeWald, 30 Ga.App. 606, 118 S.E. 703 (1923) (requiring the suit to be brought in the name of the nominal obligee) was forever laid to rest when the Georgia Supreme Court in Pacific National Fire Insurance Co. v. Cummins Diesel of Georgia, Inc., 213 Ga. 4, 96 S.E.2d 881 (1957) said,

> * * * [T]his suit by a materialman in its own name against the obligors in such a bond for materials furnished is not subject to dismissal upon the ground that it is not brought in the name of the obligee named in such bond. *Id.* at 7, 96 S.E.2d at 883.

United's contention that the bond in *Cummins Diesel* was one required under the Miller Act and, therefore, unlike our own, is erroneous inasmuch as that court specifically stated, "the bond here sued upon was given by a subcontractor and is one not provided for in the Federal statute". *Id.* at 7, 96 S.E.2d at 883.

In conclusion, it is the holding of this court that Georgia has adopted in private bond matters a similar rule to that previously codified in Ga.Code Ann. § 23–1708 with regard to public bonds, accord, Hays Heating and Plumbing Co. v. Jacobs Const. Co., et al., Civil Action No. 2208 (M.D.Ga. Oct.21, 1966); Aetna Casualty and Surety Co. v. Aluminum Co. of America, No. 45274 (Ga.App. July 10, 1970). Plaintiff, here, may properly sue United in its own name, since the bond, as interpreted by ample case precedents and the parties themselves, was intended to inure to the benefit of the subcontractor of Magna Building Corp., a class into which plaintiff belongs.

For the above stated reasons, this court denies the third party defendant's motion to dismiss.