**SIMS' CRANE SERVICE, INC., Plaintiff,**

v.

**RELIANCE INSURANCE COMPANY, Defendant.**

**Civ. A. No. CV180–40.**

United States District Court,
S. D. Georgia,
Augusta Division.

May 15, 1981.

William A. Trotter, III and Patricia Warren, Wilson & Trotter, Augusta, Ga., for plaintiff.

John M. Tatum, Savannah, Ga., for defendant.

ORDER

BOWEN, District Judge.

The above-captioned case is presently before the Court on the parties' cross motions for summary judgment, or, in the alternative, for partial summary judgment. On review of the pleadings, affidavits and discovery on file, the following facts emerge as uncontested:

Whalley Construction Company, Inc. [Whalley] entered into a general contract with Georgia Infirmary Non-Profit Housing Corporation [Georgia Infirmary] for the construction of an apartment complex in Savannah, Georgia. Financing for the project was provided by the Department of Housing and Urban Development [HUD]. Pursuant to the requirements of the general contract, Whalley, as principal, and defendant Reliance Insurance Company [Reliance], as surety, executed and delivered a performance and payment bond on a printed HUD form, in favor of Georgia Infirmary and the Secretary of HUD, in the amount of $3,659,800.00. The bond is conditioned upon Whalley performing all undertakings of the general contract and satisfaction of all claims and demands incurred under such contract, including "all amounts due for materials, lubricants, oil, gasoline, coal and coke, repairs on machinery, equipment and tools, consumed or used in connection with the construction of such work, and all insurance premiums on said work, and for all labor, performed in such work whether by subcontractor or otherwise."

Whalley subcontracted a portion of the work required by the general contract to H. S. Horn Construction Company, Inc. [Horn] on a cost plus a fee basis subject to an agreed maximum, after all change orders, of $438,308.43. In the performance of its subcontract, Horn leased cranes from plaintiff Sims' Crane Service, Inc. [Sims'] on terms of an oral contract agreed to by Horn and Sims' in accordance with the prior dealings between the parties and the custom and usage of the trade. Pursuant to this agreement, Sims' furnished a crane, serial number 35228, without a crane operator, to Horn on or about March 8, 1979. At the

time of delivery, a delivery receipt, No. 0357, recording the condition of the crane was signed by agents of Sims' and Horn. On March 30, 1979, the crane was damaged at the job site while being operated by an employee of Horn, and subsequently was repaired by Sims'.

Shortly thereafter, another crane, serial number 35109, was leased by Horn. The lease began on March 31, 1979 and the crane remained at the job site until approximately June 22, 1979. Sims' claims that rental charges for cranes supplied by Sims' remain due and owing by Horn.

Sims' brought this action on the payment bond, seeking to impose liability on the surety for the unpaid rent and repair costs on its cranes, and attorney's fees for the cost of collection. In its motion for summary judgment, plaintiff contends that there is no genuine issue of material fact as to the validity of its claim under the terms and conditions of the bond and the concomitant liability of the surety. By cross motion, Reliance asserts that the terms of the bond, when construed in accordance with the Georgia law, do not permit recovery of any of the items sought by plaintiff. The issue presented is whether plaintiff, as a materialman in the status of lessor of machinery to a subcontractor of the prime, is, as a matter of law, an intended beneficiary under the general contractor's surety bond entitled to recovery on the bond for the default of the subcontractor.

■ Ordinarily, as a matter of construction, "the liability of a surety on a bond which is plain and unambiguous is governed, like any other contract, by the intention of the parties as expressed in the instrument." *American Casualty Co. v. Irvin*, 426 F.2d 647, 650 (5th Cir. 1970); *see Barge & Co., Inc. v. Oakwood*, 128 Ga.App. 597, 598, 197 S.E.2d 405 (1973) (materialman's right to sue on a private, voluntary bond must be determined from the intent of the parties); 17 Am.Jur.2d *Contractors' Bonds* § 17 (1964). Such construction and interpretation of a written contract is matter of law for the court, *see King v. Gilbert*, 445 F.Supp. 479, 483 (N.D.Ga.1977), aff'd, 5

Cir., 569 F.2d 398 (1978), and, therefore, is properly subject to disposition by summary judgment. See *R. C. Craig Limited v. Ships of Sea, Inc.*, 345 F.Supp. 1066, 1069 (S.D.Ga. 1972). If, however, an ambiguity remains after application of all applicable rules of construction, then a jury question is presented. *See National Car Rental System, Inc. v. Council Wholesale Distributors, Inc.*, 393 F.Supp. 1128, 1132 (M.D.Ga.1974). It should be noted that "a contract is not ambiguous, even though difficult to construe, unless and until an application of the pertinent rules of interpretation leaves it uncertain as to which of two or more permissible meanings represents the true intention of the parties." *Runyan v. Economics Laboratory, Inc.*, 147 Ga.App. 53, 55, 248 S.E.2d 44 (1978). Thus, in deciding the propriety of summary disposition on one or more of plaintiff's claims, the task before the Court is to analyze the language of the bond, in light of the pertinent rules of construction, and determine whether: (1) it is a certainty, as a matter of law, that the intention of the parties to the payment bond, as reflected in the terms and conditions of the bond and gleaned therefrom, is to include Sims' as a beneficiary of the bond, or, conversely, (2) it is a certainty, as a matter of law, the plaintiff is not such an intended beneficiary.

Turning, then, to the material language of the bond, it provides that:

the Principal shall . . . satisfy all claims and demands incurred under [the general] contract, and shall promptly make payment to all persons, firms, subcontractors, and corporations furnishing materials for or performing labor in the prosecution of the work provided for in [the general] contract . . . , including all amounts due for materials, . . . repairs on machinery, equipment and tools, consumed or used in connection with the construction of such work, . . . , and for all labor, performed in such work whether by subcontractor or otherwise . . . .

The operative phrase "furnishing materials for . . . the prosecution of the work provided for in [the general] contract" clearly

denotes an intent by the parties to endow materialmen, not just subcontractors, with a beneficial interest in the bond. Whether this beneficial interest is intended to extend only to materialmen in privity or having a direct relationship with the general contractor is not express by the terms of the bond. Yet, the language "*all* persons, firms, subcontractors, and corporations furnishing materials . . . consumed or used in connection with the . . . work", and the concluding phrase of the above-quoted excerpt, "performed in such work whether by subcontractor or otherwise," is evincive of an intent to include other materialmen as beneficiaries, not simply those furnishing materials directly to the prime contractor. The bond does not expressly define persons furnishing materials as including or excluding any type of materialman, much less a lessor of machinery to a subcontractor, and consequently resort must be had to the applicable rules of contract construction and Georgia case law to resolve whether such a delineative intent may be affixed as a matter of law.

■ Under Georgia law since 1949, "[t]he beneficiary of a contract made between other parties for his benefit may maintain an action against the promisor on said contract." Ga.Code Ann. § 3–108 (1975). Accordingly, materialmen having a beneficial interest in a contractor's bond may bring an action on the bond in their own name rather than in the name of the nominal obligee. *See Climatrol Industries, Inc. v. Home Indemnity Co.*, 316 F.Supp. 314, 318 (N.D.Ga. 1970). Recognizing that a materialman, as a third-party beneficiary, may have a statutory capacity to sue on a bond, Georgia courts necessarily have grappled with various bond terminology in deciding whether the bond actually inures to the benefit of a particular plaintiff-materialmen. *See Climatrol Industries Inc. v. Home Indemnity Co.*, 316 F.Supp. 314 (N.D.Ga.1970) (plaintiff-materialman seeking payment for ma-

terials furnished to subcontractor of prime may sue surety on payment bond between subcontractor and prime, as real obligee in interest, when subcontractor bond is conditioned to pay all persons who have contracts with the principal [subcontractor] for labor and materials); *Travelers Indemnity Co. v. Cleveland Electric Co.*, 147 Ga.App. 653, 249 S.E.2d 624 (1978) (supplier to wholesaler from whom general contractor ordered materials, held entitled to sue on general contractor's payment bond for wholesaler's nonpayment when claimants under bond were defined as one having a direct contract with a subcontractor for labor, material or both, used or reasonably required for use in the performance of contract); *Sentry Indemnity Co. v. Central Electric Co., Inc.*, 136 Ga.App. 557, 222 S.E.2d 40 (1975) (express provision in bond stating that no right of action shall accrue on the bond to or for the use or benefit of any person or corporation other than the named owner and lender, held to preclude action on bond by materialman); *Robinson Explosives, Inc. v. Dalon Contracting Co., Inc.*, 132 Ga.App. 849, 209 S.E.2d 264 (1974) (materialman furnishing materials and services to subcontractor allowed to maintain action against surety on general contractor's payment bond for subcontractor's nonpayment when claimants under bond were defined to include "one having a direct contract with a subcontractor of the principal for labor, material, or both used or reasonably required for use in the performance of the contract"); *Barge & Co. v. Oakwood Steel*, 128 Ga.App. 597, 197 S.E.2d 405 (1973) (materialman under contract with a material supplier of a general contractor, held not entitled to sue on general contractor's payment bond for material supplier's default when the condition of the bond was to "pay all lawful claims of materialmen . . . for · . . . materials furnished *directly* to "the general contractor.) [1]

---

1. Several cases prior to the enactment of section 3–108 of the Georgia Code, recognizing a third-party beneficiary's right of action, have also considered the issue of a materialman's right to sue on a payment bond. As illustrated

in these cases, given the statutory incapacity of a beneficiary to sue, the proper procedure was for the named obligee (usually the owner) to bring an action on the bond for the use of the materialman. *See, e. g., Union Indemnity Co.*

The above-cited cases may be generally categorized into three groups: (1) if the general contractor's payment bond defines a claimant under the bond as one supplying material to a subcontractor, then a materialman of a subcontractor may sue on the bond for the subcontractor's nonpayment; (2) if the bond expressly limits a right of action on the bond to the named obligees or is conditioned on the general contractor's payment of only materialmen having a direct relationship with the general contractor, then a materialman of a subcontractor may not sue on the payment bond; and (3) if the bond is conditioned on the general contractor's payment of all persons furnishing labor and material under or for the contract, then, at a minimum, materialmen of the general contractor may maintain an action on the bond. On review of the Georgia case law, however, it appears that no Georgia appellate court has construed language similar to that used in the bond at issue in this action.

*v. Riley*, 169 Ga. 229, 150 S.E. 216 (1929) (trustees as named obligees in general contractor's bond permitted to sue for use of unpaid materialmen of general contractor where bond condition was that principal shall pay all persons who have contracts directly with the principal for labor or materials); *Fidelity & Deposit Co. v. Pittman*, 52 Ga.App. 394, 183 S.E. 572 (1935) (trustee in bankruptcy of prime contractor, which was named obligee in subcontractor's payment bond, permitted to bring action on bond for use of a materialman of the subcontractor-principal); *American Surety Co. v. Dewald*, 30 Ga.App. 606, 118 S.E. 703 (1923) (where general contractor's bond was conditioned on the principal's payment of all persons having contracts directly with the principal for labor and materials, owner-named obligee was allowed to bring action on the bond for the use of materialman for the default of the general contractor). *See also Southern Surety Co. v. Dawes*, 161 Ga. 207, 130 S.E. 577 (1925).

It should be noted, tangentially, that there has been some confusion in the Georgia courts between compensated sureties and uncompensated sureties. *See Brock Const. Co. v. Houston Gen. Ins. Co.*, 144 Ga.App. 860, 860–61, 243 S.E.2d 83, *aff'd*, 241 Ga. 460, 246 S.E.2d 316 (1978) (*comparing Brunswick Nursing & Convalescent Center, Inc. v. Great American Insurance Co.*, 308 F.Supp. 297 (S.D.Ga.1970) *with The Winston Corp. v. Continental Cas. Co.*, 508 F.2d 1298 (6th Cir. 1975)). The distinction between the two types of sureties is significant because of the statutory rules of construction

With respect to plaintiff's claim for rental on the cranes leased to Horn and used at the construction site, Reliance argues that the bond terminology—"all persons . . . *furnishing materials* for . . . the work"—should be construed in accordance with the judicial interpretation of similar language in the Georgia lien statute. Georgia Code § 67–2001 provides in part that "persons *furnishing material* for the improvement of real estate . . . shall have a special lien on such real estate." Under this statutory language, Georgia courts "have held that the equipment or machinery rented or leased to a contractor used in performing his work are non-lienable." *Mableton Erectors, Inc. v. Dunn Properties of Georgia, Inc.*, 135 Ga.App. 504, 218 S.E.2d 175 (1975); *see D. H. Overmyer Warehouse Co. v. W. C. Caye & Co., Inc.*, 116 Ga.App. 128, 157 S.E.2d 68 (1967); *Air Service Co. v. Cosmo Investments, Inc.*, 115 Ga.App. 596, 155 S.E.2d 413 (1967). Thus, the language in the Georgia lien statute—"persons furnishing material"

codified at Title 103 of the Georgia Code. Of particular importance is the applicability of the rule of "strict law" embodied in Ga.Code § 103–103, which provides an "absolute rule of strict construction of the surety contract in favor of the surety." The Georgia Supreme Court has now determined that this rule of construction applies only to uncompensated sureties (sureties acting gratuitously), not to compensated sureties (sureties engaged in writing surety bonds for profit). *Houston General Ins. v. Brock Construction, Inc.*, 241 Ga. 460, 246 S.E.2d 316 (1978) (Title 103 does not apply to compensated sureties). Thus, Georgia cases deciding that a materialman was not a beneficiary under a contractor's bond with a compensated surety, on the basis of the "strict law" rule that suretyship agreements shall not be extended by implication, are no longer authoritative. *See, e. g., Glens Falls Indemnity Co. v. Southeastern Construction Co.*, 207 Ga. 488, 62 S.E.2d 149 (1950). Yet, it should also be borne in mind:

that the inapplicability of the rule of ";strict law" does not detract from the independent principle that where the contract is unambiguous and subject to only one construction, the liability of any surety (whether compensated or not) is not to be extended beyond the terms of the contract by implication of interpretation.

*Houston, supra,* 241 Ga. at 464, 246 S.E.2d 316.

—, as interpreted by the courts, does not include lessors of machinery. *See Pacific Southern Mortgage Trust v. Melton*, 151 Ga.App. 593, 260 S.E.2d 910 (1979).

In rebuttal, plaintiff points out that the Georgia Legislature, Act of March 2, 1978, No. 787, § 1, 1978 Ga.Laws 243 (codified at Ga.Code Ann. § 67–2001 (Cum.Supp.1980)), amended the definition of "materials," for purposes of the lien statute, to include "machinery, or equipment used in making improvements to the real estate, to the extent of the reasonable *rental* value of such . . . machinery or equipment." Plaintiff also cites *Ingalls Iron Works Co. v. Standard Accident Ins. Co.*, 107 Ga.App. 454, 130 S.E.2d 606 (1963), in which the Georgia Court of Appeals compared the statutory construction of the Georgia lien law, section 67–2001, with the judicial interpretation accorded the statutory bond requirement for contractors engaged in a public work. Ga. Code Ann. § 23–1705 (Cum.Supp.1980). While recognizing some similarity between the two statutes, the *Ingalls* court emphasized that sharp differences existed:

> The lien statute is given a strict construction, while the bonds statute is "liberally

construed for the protection of those who do work or furnish materials for public works." . Under the lien statute the lien on the property is the security for the laborer and the materialman, while under the bond statute, where no lien can be secured, the bond is the security. The lien is created and imposed by operation of law, while the bond is a matter of contract, albeit a contract required by the statute to be made in order to give validity to another.

107 Ga.App. at 458, 130 S.E.2d 606 (citations omitted).[2]

Thus, both parties direct the Court's attention to Georgia appellate decisions construing the statutory terminology and the legislative intent of certain Georgia laws. Yet, the Court is mindful both that the bond at issue is not a statutory bond, but instead is essentially one between private parties, and that the remedy sought is not an enforcement of a special lien. It seems doubtful, therefore, that such statutory interpretations by the Georgia courts are necessarily dispositive on the meaning and intent of the bond language in this case.

---

2. Section 23–1705(2), as amended, provides that a public contractor shall give "[a] payment bond with good and sufficient surety or sureties, payable to the State, county, municipal corporation, or public board or body thereof for which the work is to be done, and for the use and protection of all subcontractors and all persons supplying labor, materials, machinery, and equipment in the prosecution of the work provided for in said contract." The purpose of the statutory bond requirement is to protect subcontractors and materialmen since neither may secure a mechanic's lien upon the proposed or completed public building. *See Motor Supply Co. v. Saint Paul Mercury Indemnity Co.*, 67 Ga.App. 236, 239, 19 S.E.2d 737 (1942); *Whitley v. Bryant*, 59 Ga.App. 58, 59, 200 S.E. 317 (1938). Yet, the protection of the bond is not limited only to those subcontractors and materialmen who would otherwise have a lien if private property was involved. *See Western Casualty & Surety Co. v. Fulton Supply Co.*, 60 Ga.App. 710, 4 S.E.2d 690 (1939). Thus, for example, even though gasoline and oil furnished to a contractor for the purpose of carrying out the contract may not be a lienable item under the Georgia lien statute, the gasoline and oil are "materials" under the statutory bond requirement, and the supplier comes within the

protection of the bond. *Sinclair Refining Co. v. Colquitt Co.*, 42 Ga.App. 718, 157 S.E. 358 (1930). It is apparent therefore that the Georgia courts *do not* uniformly apply the definitional limitations of the term "materials," as used in section 67–2001, when that term arises in other contexts.

As compared with private bonds, statutory bonds for public contracts are liberally construed to effectuate the intent of the statute. *See Motor Supply Co. v. Saint Paul Mercury Indemnity Co.*, 67 Ga.App. 236, 239, 19 S.E.2d 737 (1942). The presumption under a statutory bond is that the intention of the parties was to execute a bond in accordance with the aims of the statute. *See Home Indemnity Co. v. Battey Machinery Co.*, 109 Ga.App. 322, 326–27, 136 S.E.2d 193 (1964). As interpreted by Georgia appellate courts, the statutory bond requirement is "not only [to] protect[ ] persons doing work or furnishing materials etc. to the contractor, but also [to] protect[ ] subcontractors and *employees of subcontractors* furnishing work or materials etc. for the purpose of the principal contract . . . ." *Whitley v. Bryant*, 59 Ga.App. 58, 61, 200 S.E. 317 (1938). *See also Adams & Co. v. General Electric Supply Corp.*, 62 Ga.App. 287, 290–91, 8 S.E.2d 135 (1940).

The lien statute, section 67–2001, and the statutory bond requirement, section 23–1705, each embody a distinct legislative objective which the courts, through interpretative decisions, reflect. The lien statutes, for example:

> are in derogation of the common law, they are to be strictly construed against the mechanic and materialman and will be "extended no further than its words plainly import." The materialman has the burden of proving his lien and "must bring himself clearly within the law."

*Pacific Southern Mortgage Trust v. Melton, supra,* 151 Ga.App. at 594, 260 S.E.2d 910. The statutory bond requirement, on the other hand, is afforded a liberal interpretation for the protection of persons who supply labor and materials used in the prosecution of the general contract. *See Adams & Co. v. General Electric Supply Corp.,* 62 Ga.App. 287, 288–89, 8 S.E.2d 135 (1940).

■ This difference in statutory schemes, as described by the *Ingalls* court *supra,* is manifest in the dissimilar meaning assigned to the term "materials," which is used in both statutes. While, as defendant notes, the term "materials" has been defined as "something that goes into and becomes a part of the finished structure, such as lumber, nails, glass, hardware, etc., which is necessary to the completion of the build-

ing," *D. H. Overmyer, supra,* 116 Ga.App. at 130, 157 S.E.2d 68, for purposes of the Georgia lien statute, the very same term, as used in the statutory bond requirement, has been held to "include all persons who furnish material for the purpose of the contract, *irrespective of whether . . . they would have liens for the cost of the material furnished." Sinclair Refining Co. v. Colquitt County,* 42 Ga.App. 718, 718, 157 S.E. 358 (1930) (holding supplier of gasoline and oil to contractor a protected materialman under bond); *see Western Casualty & Surety Co. v. Fulton Supply Co.,* 60 Ga.App. 710, 4 S.E.2d 690 (1939). *See also* discussion at note 2, *supra.* Indeed, the Georgia Court of Appeals has concluded that the rental value of a "dragline" crane, leased to a public contractor, is a recoverable item under the contractor's statutory bond requirement when the bond is conditioned "for the use . . . of all persons doing work or furnishing . . . machinery, or materials under or for the purposes of such contract." *American Surety Co. v. Koehring Co.,* 44 Ga.App. 769, 162 S.E. 840 (1932).[3] Thus, although the term "materials," as judicially interpreted, may exclude certain items as nonlienable, the word may very well include the same items for purposes of a separate statute, such as the bond statute. Clearly, then, the lack of a right of action to enforce a special

---

3. In so holding, the *Koehring* Court questioned rhetorically:

> Is it, then, too fanciful to say that such rental value may be regarded, at least approximately, as the measure of the extent that such machinery itself is consumed in the use thereof in the prosecution of the work, and that wear and tear [upon the machinery as a measure of rental value], in a certain sense, enters into the work just as certainly as does steel or concrete or any other material or human labor.

44 Ga.App. at 771, 162 S.E. 840. A similar holding might follow in this case assuming the bond was executed pursuant to the statutory requirements of section 23–1705. To repeat, the bond is conditioned to pay all persons furnishing materials, including certain named items, consumed or used in connection with the construction of the work. Although machinery is not expressly specified, the statutory use of the term would be incorporated into the bond, since "whatever is not expressed [in the bond] and ought to have been incorporated must be

read in, so as to conform to the requirements of the law." *Home Indemnity Co. v. Battey Machinery Co.,* 109 Ga.App. 322, 327, 136 S.E.2d 193 (1964). Even without express mention of "machinery," the term may nevertheless be implicit in the bond language—"furnishing materials,"—in view of the *Koehring* court's equation of rental value on machinery with any other material consumed in construction and the *Sinclair* court's expansive interpretation of the term "materials." 42 Ga.App. at 718, 157 S.E. 358. Hence, as in *Koehring,* a lessor of machinery to Whalley, such as plaintiff (assuming hypothetically that Whalley is a public contractor under the statute) would have an action on the postulated statutory bond. Similarly, since the protection of the statutory bond extends to suppliers and materialmen of a subcontractor, *see Whitley v. Bryant,* 59 Ga.App. 58, 61, 200 S.E. 317 (1938), a lessor of a subcontractor seemingly would have an action on the presumed bond for the rental value of supplied material.

lien under the Georgia lien law, as statutorily provided or judicially discerned, does not, of itself, preclude a beneficiary's right to sue on a statutory payment bond, or by analogy, on a private payment bond.[4] *See* 4 *Corbin on Contracts* § 803, at 192 (1951) ("It should be observed that there is nothing to prevent a surety from executing a bond the coverage of which would be greater than that included under ordinary mechanics' liens."). The remedies afforded a particular materialman under (1) the lien statute, (2) the bond statute for public contractors, and (3) the contractual rights appurtenant to a private payment bond, are distinct and separate, and, even though certain terminology may overlap, the judicial construction of that terminology is not uniform for all remedies.

■ Accordingly, defendant's attempt to assign, as a matter of law, an intent and meaning to the bond phrase—"furnishing materials"—in accordance with the Georgia decisional law interpretation of a similar phrase in the lien statute, must be rejected. By the same token, however, the Court is not persuaded that rules of construction and interpretation applicable when constru-

ing statutory surety bonds should automatically apply in this case. As noted by Professor Corbin, " 'Much confusion has resulted from the failure to distinguish between statutory bonds for the completion of public works of various kinds and bonds securing the completion of private contracts'." *Corbin, supra* § 798 at 164 n.5 (quoting *Maryland Casualty Co. v. Johnson,* 15 F.2d 253 (D.C.Mich.1926)). When construing a public contractor's statutory payment bond, courts are mindful of the special legislative policy considerations underpinning the statute and often incorporate the statutory conditions into the bond. *See, e. g., Motor Supply Co. v. Saint Paul Indemnity Co.,* 67 Ga.App. 236, 19 S.E.2d 737 (1942); *Adams & Co. v. General Electric Supply Co.,* 62 Ga.App. 287, 8 S.E.2d 135 (1940). *See generally* 17 Am. Jur. *Contractors' Bonds* §§ 46–49 (2d ed. 1964). While Georgia appellate court decisions interpreting surety bonds executed pursuant to section 23–1705 may, in part, be favorable to plaintiff's position, *see* note 3 *supra,* the bond at issue in this case is not such a statutory bond. The parties have cited no statute or regulation which would expressly require the execution of the bond in question.[5] Thus, it seems that the perti-

---

**4.** Quite to the contrary, "If the promisee's property was under no liability to a lien, this fact is evidence that the provision in the bond was intended for the benefit of third parties." 4 *Corbin on Contracts* § 800, at 178 n.25 (1951) (citing *Southwestern Portland Cement Co. v. Williams,* 32 N.M. 68, 251 P. 380 (1926)). As Corbin has commented, in analyzing the motives of a promisee-owner who requires a contractor's payment bond even though no materialman's lien may attach to the owner's property:

It is not unreasonable to draw the inference, as some courts have done, that [the owner-promisee's] motive was a desire to give added security to the third persons. But even when the promisee has no duty to the third persons and his property is under no liability to a lien, it is very generally recognized that he has something to gain from giving security to laborers and materialmen upon whom the cost and quality of the construction work largely depend. *If they are held to have a right on the bond, it brings them added security; such added security for them is economically beneficial to the promisee as well, in that the shifting of the risk of non-payment from the laborers and materialmen to the surety will tend to the standardization of*

prices and wages and also of the quality of labor and materials.

*Id.* § 801 at 179–81. Of course, the surety bond may be so worded as only to protect the owner-obligee against materialman's liens, and thus exclude materialmen who would not otherwise have a lienable interest; however, the bond in this case does not contain such delimiting language.

**5.** The bond is entitled "PERFORMANCE—PAYMENT BOND (DUAL OBLIGEE) (Under Section 202 of the Housing Act of 1959). While the parties, in their pleadings and briefs, do not address the issue, it appears that the contract between Whalley and Georgia Infirmary for the construction of the apartment complex was financed by HUD pursuant to section 202 of the Housing Act of 1959, which is codified at 12 U.S.C. § 1701q. The purpose of this Act "is to assist private nonprofit corporations . . . to provide housing and related facilities for elderly or handicapped families." 12 U.S.C. § 1701q(a)(1). A review of the Act and pertinent regulations, 24 C.F.R. §§ 277.1–277.11 (1980), does not reveal an express statutory requirement that contractors with the borrower execute a payment bond.

nent rules of construction for statutory bonds, while of some authority, should not be given controlling weight in construing what is essentially a common law surety bond.

■ Several principles governing private payment bonds have already been noted. In particular, the *stricti juris* rule, providing that a surety's liability will not be extended by implication or interpretation, is only applicable to uncompensated sureties. *See* note 1, *supra.* Unlike gratuitous sureties, compensated sureties are not favorites of the law. *See Peachtree Roxboro Corp. v. United States Casualty Co.,* 101 Ga.App. 340, 346, 114 S.E.2d 49 (1960). On the contrary, " '[t]he contract of a surety company, acting for compensation, and of any other surety for hire, is construed most strongly against the surety and in favor of the indemnity which the obligee has reasonable grounds to expect'." *Brock Construction Co. v. Houston General Ins. Co.,* 144 Ga. App. 860, 862–63, 243 S.E.2d 83, *aff'd,* 241 Ga. 460, 246 S.E.2d 316 (1978) (quoting 74 Am.Jur. *Suretyship* § 256). Moreover, as commented by Professor Corbin:

> The compensated surety has become an institution that is well suited to carry the risk of the principal contractor's default, whereas individual laborers and materialmen are frequently very ill prepared to carry the risk .... [Courts] may well interpret a bond that is expressly conditioned on the payment of laborers and materialmen as being a promise to pay them and made for their benefit. The words reasonably permit it, and social policy approves it.

*Corbin, supra* § 800, at 177–78.

■ In resolving the issue in this case, reference must be had to "contract" law governing third party beneficiaries. To be the beneficiary of a contract between two or more contracting parties, third party "privity" is not required, and the promisee under the contract need not owe some legal duty to the third party. Instead, as a general rule:

> A third party who is not a promisee and who gave no consideration has an enforceable right by reason of a contract made by two others (1) if he is a creditor of the promisee or of some other person and the contract calls for a performance by the promisor in satisfaction of the obligation; or (2) if the promised performance will be of pecuniary benefit to him and the contract is so expressed as to give the promisor reason to know that such benefit is contemplated by the promisee as one of the motivating causes for his making the contract.

*Corbin, supra* § 776, at 18.

■ The extent of the undertaking of Reliance, as the promisor in this action, must be determined by the conditions of the bond. "Words of 'condition' are not words of 'promise' in form; but in the case of a penal bond they must be construed to be words of promise, inasmuch as the only express words of promise are those in which payment of the penal sum is promised." *Corbin, supra* § 800, at 173–74. Considered in this context, the words of condition in the bond reveal several promises by the surety: (1) a promise to indemnify and save harmless the obligees from all costs and damages; (2) a promise to reimburse and repay the obligees all outlay and expense which they may incur in making good any default; and (3) a promise to make payment to all persons furnishing materials for the prosecution of the work provided for in the general contract including all amounts due for materials, lubricants, oil, gasoline, coal and coke, repairs on machinery, equipment and tools, consumed or used in connection with the construction of such work. A breach of the condition or promise may be viewed as a condition precedent to an action on the bond. *Id.* at 174 n.16.

Turning to the intentions of the parties to the bond, the purposes, motives or intents of the contractor-principal as well as the promisor-surety may be accorded little weight. *See id.* § 776, at 16. The contractor executed the bond in order to be awarded the general contract. Presumably the surety's motivating purpose is the procurement of the compensating premium. Necessarily, the surety's intention, as bound by

law, is to perform the promises reflected in the conditions of the bond and honor the contract. The promises in the bond are essentially twofold: to indemnify the obligees against loss and to pay all persons furnishing material and labor consumed or used in connection with the prosecution of the work under the general contract. Apparently, the motivating purposes of the obligees in requiring these promises are (1) to protect the obligees' interests in the property against the enforcement of liens or other liability affecting their interests, and (2) to provide an added security for laborers and materialmen. *See id.* § 801 & Supp. § 799.

Under the Georgia lien statute, section 67–2001(3), it appears that the obligees' property would be subject to a special lien for the rental value of plaintiff's machinery. *See Georgia-Pacific Corporation v. Dan Austin Properties*, 126 Ga.App. 191, 192, 190 S.E.2d 131 (1972) ("§ 67–2001 provides a lien only to materialmen who may have supplied the materials directly to the owner of the realty, or to a contractor or a subcontractor engaged in making the improvement"). In one sense, therefore, plaintiff may be considered a creditor beneficiary of the obligees under the bond, with respect to rental value of machines, since plaintiff seemingly has the power to affect the obligees' property interests through enforcement of a materialman's lien, and this power would be extinguished by payment from the surety to plaintiff under the conditions of the payment bond. *See Corbin, supra* § 802 & n.33. Payment by the surety for this purpose seems especially intended by the lender-obligee, since the first paragraph of the bond provides: "Lender has agreed to lend to Owner a sum of money to be secured by a mortgage on said project and to be used in making payment under said contract, and desires protection as its interest may appear."

The second main promise in the condition of the bond—to pay all persons furnishing material, etc.—is not restricted only to instances where the obligees are under a duty or are otherwise subject to liability to a third person materialman.[6] Thus, the motivating purpose of the obligees in exacting this promise is not solely for their own security and insulation from liability, but is rather for the security of described third-party materialmen. As noted early, *see* note 4, *supra*, such added security provided materialmen under a payment bond is economically beneficial to an owner-obligee, not in the sense of discharging an obligation or duty, but rather in the sense "that the shifting of the risk of non-payment from the laborers and materialmen to the surety will tend to the standardization of prices and wages and also of the quality of labor and materials." *Corbin, supra* § 801, at 181. Materialmen may be viewed as donee beneficiaries of this promise, *see id.* § 802, since the obligees' purpose in requiring this bond condition is not strictly to protect themselves from duties or liabilities owing to materialmen.

The words of condition in the bond do not limit its protection only to persons having a direct relationship with the general contractor. The plain language of the bond condition specifies all persons furnishing materials for the prosecution of the work, thereby necessarily including a materialman of a subcontractor where the materials are "consumed or used in connection with the construction." Thus, from the vantage point of "intention to benefit," the condition in the bond evinces an intention by the obligees, in requiring a surety promise to "make payment to all persons furnishing materials," to benefit materialmen of a subcontractor. Whether this benefit extends to the rental value of materials furnished, should be resolved, in accordance with prevailing rules construction, in favor of the interests of the obligees and beneficiaries

---

**6.** As discussed earlier, the condition in the bond already contains provision to indemnify the obligees and to save them harmless from costs or damages. The separate provision in the bond for the payment of all persons furnishing materials would be unnecessary and duplicitous if the obligees' sole purpose in requiring this provision was to protect themselves from liability.

and against the compensated surety. *See Brock Construction Co., supra*, 144 Ga.App. at 862–63, 243 S.E.2d 83; *Corbin, supra* § 800, at 176–77.

The Georgia Court of Appeals, in allowing recovery on a statutory surety bond, has postulated that rental value of leased machinery, as compensation in part for wear and tear, is a measure of the extent to which the machinery is consumed in the prosecution of the construction work. *American Surety Co. v. Koehring Co.*, 44 Ga.App. 769, 162 S.E. 840 (1932); *see note 3 supra*. While this decision is not controlling since a statutory bond was at issue, the Court is persuaded that rental value of machinery owing to a lessor materialman of a subcontractor is properly considered an item within the intended protection of the surety's promise, required by the obligees, to pay all persons furnishing materials consumed in the general contract. Certainly, machinery essential to the performance of a construction contract and used in connection therewith is ofttimes leased. The rental value of that machinery is not an unforeseen expenditure of the general contractor or of its subcontractors and no less a necessary item of expense than the "lubricants, oil and gasoline" needed to operate the machinery. Any distinction between lessor materialmen furnishing machinery for use in connection with the construction work and "all persons furnishing materials" consumed or used in connection with the work, is not only difficult to perceive but is unwarranted in view of the realities of construction contracting, and amounts to an undue circumscription of the protection afforded by the payment bond.

It is apparent, therefore, that plaintiff, in asserting a claim for rental value of leased machinery, may be viewed as a beneficiary under the surety bond in two senses: a creditor beneficiary of the obligees, having the power to enforce a lien against the obligees' property interests which payment by the surety would extinguish, and a donee beneficiary, upon whom the obligees intended to bestow the added security of a payment bond. In either case,

payment by the surety for the rental value of cranes leased by plaintiff to Horn is not beyond the terms of the surety's promise in the condition of the bond or the risk undertaken in executing the payment bond for which the surety was compensated. *See Corbin, supra*, Supp. § 799. Accordingly, summary judgment is granted in favor of plaintiff for the unpaid rental value of the cranes leased to Horn for use in construction of the work provided for in the general contract between Georgia Infirmary and Whalley.

Plaintiff's claim for the cost of repairing a leased crane, allegedly caused by Horn's negligence, presents a different situation. The Georgia lien statute, section 67–2001, does not by its terms permit a materialman's lien for the cost of repairs; in this sense, therefore, plaintiff may not be considered a creditor beneficiary of the obligees. The language of the bond, on the other hand, provides for the payment of all persons furnishing materials for the prosecution of the work provided for in the general contract, including "repairs on machinery." The key inquiry is whether the phrase "repairs on machinery" includes major repair costs necessitated by a subcontractor's negligence or is limited to incidental repair expenses ordinarily incurred during construction.

The Georgia Court of Appeals has addressed this issue in the context of a public contractor's statutory surety bond. In *Western Casualty & Surety Co. v. Fulton*, 60 Ga.App. 710, 712, 4 S.E.2d 690 (1930), the court recapitulated the general rule:

[W]hile there may be a recovery on a public contractor's bond for material and labor used in incidental and current repairs to the contractor's machinery, there can be none for major repairs involving the replacement of old with new parts, in the absence of proof that the new parts were consumed in the work covered by the bond. The determinative distinction is between the items going into the work, or specially contributing to the execution of the contract and nothing else, and

those properly chargeable to the plant and equipment of the contractor, and available not only for the pending work but for other work as well.

See *W. J. Bremer, Inc. v. United Bonding Ins. Co.*, 122 Ga.App. 183, 176 S.E.2d 633 (1970); *Yancey Brothers Inc. v. American Surety Co.*, 43 Ga.App. 740, 160 S.E. 100 (1931). Hence, repair costs are recoverable under a statutory surety bond if the repairs were "consumed" in the prosecution of the work covered by the bond, in the sense that they specially contributed to the pending work only and were not of particular use in other unrelated work.

In this case, plaintiff's crane, serial number 35228, was extensively damaged at the job site during construction as the result of Horn's alleged negligence. A substitute crane was provided by Sims' while plaintiff undertook major repair work on the damaged crane. The repairs required the replacement of numerous parts including the upper and lower jib sections, one twenty-foot center section and two ten-foot center sections of the 50 Ton Lorain MC550A crane. Affidavit of M. Vernon Moore, Executive Vice President and Comptroller of Sims' Crane Services, Inc. The total cost of repairs was $23,865.52.

The term "repairs on machinery" appears in the bond condition in an apparently non-inclusive listing of amounts due to persons furnishing materials, which the surety, by the terms of the bond, promises to pay: "amounts due for . . . lubricants, oil, gasoline, coal and coke [and] repairs on machinery." Of course, lubricants, oil, gasoline, coal and coke are incidental items commonly used or consumed by the general contractor or a subcontractor during the prosecution of the construction work and are of utility only for the completion of the project at hand. Clearly, the obligees intended the protection of the surety bond to benefit persons furnishing such materials "consumed or used in connection with construction." Viewed in the context of the bond language, then, "repairs on machinery" should be assigned a similar meaning: incidental items commonly used or consumed by the general contractor or a subcontractor during construction and ordinarily of necessity in completing the work.

■ Substantial repairs on machinery, not ordinarily incurred during construction, requiring the replacement of essential parts which then may be utilized in other work, may not be equated with lubricants, oil, gasoline, coal and coke used during construction. The terms of the surety bond, therefore, do not indicate an intention to benefit materialmen whose property is damaged as the result of a subcontractor's negligence. Similarly, the surety, in executing the payment bond, did not intend to insure materialmen against the negligence of subcontractors or underwrite a liability policy for subcontractors. To require payment from the surety to lessor materialmen for machinery repair costs, whenever a subcontractor damages the machinery, would unduly enlarge the risk undertaken by the surety for which it was compensated.

Accordingly, summary judgment is granted in favor of defendant on plaintiff's claim for repair costs incurred in repairing crane, serial number 352288.

The final matter for disposition is plaintiff's claim for attorney's fees and costs of collection. By amendment to its complaint, plaintiff avers that the agreement between Sims' and Horn "provides for the payment by [Horn] of attorney's fees for collection of any amount due the plaintiff, and the plaintiff has notified Horn in writing, pursuant to [Ga.Code Ann. § 20–506], that the provision for payment of attorney's fees would be enforced." In seeking to hold Reliance liable for this agreement by Horn, plaintiff argues that the surety bond is conditioned to pay all claims and demands incurred under the general contract and all outlay and expenses incurred in making good any default. Thus, plaintiff apparently contends that the surety undertook to pay expenses incurred by a lessor materialman of a subcontractor in making good a default by the subcontractor.

■ The bond condition, however, provides that the surety shall "reimburse and

repay the *Obligees* all outlay and expense which they may incur in making good any default," not the persons furnishing materials. By its terms, the bond provides only that the surety shall pay all persons furnishing materials for items consumed or used in.connection with the prosecution of the work provided for in the general contract; no mention is made of paying those persons for the costs of collection. While such a provision for payment of attorney's fees may exist in the agreement between Sims' and Horn, that agreement, or any agreement between a lessor materialman and a subcontractor, is neither expressly specified in the payment bond nor incorporated by reference. Thus, under a reasonable interpretation of the bond language, a materialman's claim for attorneys' fees, based on an agreement with a subcontractor, is not actionable.

Accordingly, summary judgment is granted in favor of defendant on plaintiff's claim for attorney's fees and costs of collection.